Judge Lane
delivered the opinion of the court:
The plaintiffs are the widow and the owners of four distributive shares of the estate of W. Perry, late of Cincinnati. The defendants are the owners of the remaining share of said estate. William Perry died seized of a block of lots in Cincinnati, a partition of which is the main object of the present bill.
A partition is resisted by the defendants, because they say a partition is already made. In 1814, all the heirs of William Perry united in presenting a petition for partition to the common pleas, of these premises. Mrs. Ferguson and the two Strattons were then under age, but their names were subscribed to the petition by their mother, Mrs. Piatt. The court granted the prayer of that petition, and appointed three commissioners to set off the land, with directions to be governed by the provisions of the act defining the duties of executors and administrators, passed in February,' 1810.
At the next term, August, 1814, an order was issued to these com.missioners, directing them to make partition, in conformity with *223 ■the statute, and make return to the- court, at the same term. Those commissioners made return,,August 5th, that they “had made the following partition.” (See map.) The map follows, containing the •division. Next follows the certificate of an oath, dated the same day, before a magistrate, in which they swore that the map exhibits the partition *made by them in compliance with the annexed order. No other proceedings appear to have been had in court; there is no acceptance of the report, no confirmation of the division, no other notice of its return.
Evidence has been taken in this suit for the purpose of showing the fairness or unfairness of this division. The testimony of the commissioners proves, that they embraced in the share set to Hub-bell, thirteen feet wide of land, which they supposed would be re-quired to enlarge the street called Western Row, and that they contemplated an alley would be run east and west through the whole block, and they attempted to equalize the value of the respective shares, upon the supposition that these alterations were made. The proof shows a diversity of opinion among the witnesses, as to the equality and justice of the partition, and although it is a subject upon which men are prone to differ, we think the evidence satisfactorily shows that the partition was at that time just.
The plaintiffs insist that these proceedings are entirely void, the report never having been accepted, and no ultimate judgment in partition having been made. By the defendant it is insisted, that although the general law, pointing out the mode of proceeding in partition, requires the second judgment; that these proceedings are under a different statute, vol. xiii. 161, sec. 37, in which no such judgment is contemplated, but under which the partition becomes complete by the act of the commissioners. Or that, at any rate, this is a proceeding by a tribunal having jurisdiction, whose acts are not void until reversed.
We do not think it necessary to decide what is the precise effect of these proceedings. It is evident the partition was in fact made between the parties in 1814, Avhich at that time was equal; and that all the adult parties took possession of their respective shares, and ever since held them in severalty, built upon, and improved them, on the faith of its validity. This court, in chancery, would not disturb a parol partition, originally fair, in which there had been so long acquiescence, and such acts of confirmation.
No difficulty is found in disposing of all the rights, except that *224 remaining in the children of Mrs. Stratton, who wére ^minors at the institution of this suit. We have been led to conclude, that even to these the same principles are applicable. They were-parties to the original partition, and we believe it was fair. Separate possession, the erection of houses, and sales of parts of the properly.have been had, upon the faith of its validity. If it be invalid, it becomes so from the common mistake of those who-managed it — that no confirmation by the court was necessary. If these minors ever possessed the right to set aside these proceedings, the subsequent transactions render it inequitable for them to exert it. We feel, at least, that to produce this effect, they have not the-right to invoke to their aid the extraordinary powers of chancery.
The opinion we express, is upon the supposition that the interest of all parties requir es the alley to be opened. The bill, however, makes no such request. The case will be sent to the Supreme Court of that county, to afford an opportunity for the-amendment.