## CONSTRUCTION OF A WILL.

Common Pleas Court of Hamilton County.

FRANK H. TAYLOR ET AL, EXECUTORS, V. EDWARD TAYLOR ET AL.

### Decided, July, 1908.

*Wills—Extrinsic Evidence in Aid of Construction of—Ambiguity Solved by Knowledge of Extraneous Facts—Words of Description and Words Constituting a Separate Bequest.*

1. The rule that extrinsic evidence is admissible in aid of the construction of a will, permits of the introduction of evidence as to the blood relationship existing between the devisees, and also of a previous will after which the one in hand was copied.

2. An estate was devised in equal parts to A, B, C, D, E, F, G, heirs of the body of Rebecca H. Taylor *per stirpes* and not *per capita*, G, H, and I.

*Held:* It having been shown that E, F, and G are heirs of Rebecca H. Taylor, the phrase "heirs of the body of Rebecca H. Taylor *per stirpes* and not *per capita* must be construed as constituting a separate bequest, and not to be descriptive of E, F, and G, who each take a separate share of the estate and also a share jointly.

*R. de V. Carroll* and *Maxwell & Ramsey*, for plaintiffs.
*Kittredge & Wilby*, contra.

SWING, J.

The plaintiffs, Frank H. Taylor and Frank H. Simpson, as executors of the last will and testament of Laura C. Taylor, deceased, pray for a construction of the will of the said Laura C. Taylor.

The particular clause of the will which seems to require construction is clause one, as follows, to-wit:

"*My late husband, Henry W. Taylor, bequeathed me an estate appraised, at the time of his death, at two hundred and seventy-six thousand dollars* ($276,000) *more or less. If at the* time of my decease there has been no shrinkage or loss in any of my investments which have been made since his death, or which may hereafter be made, or in the value of any piece or pieces of my real estate, *then I give and bequeath two-thirds of the sum of two hundred and seventy-six thousand dollars, or so much thereof* as may remain after deducting the amounts hereinafter provided for, to be divided equally among the following

relatives of my late husband, viz: Edward Taylor, of Illinois; Edward T. Dugdale, George H. Dugdale, Emma E. Dugdale, Esther E. McGregor, Edward B. Taylor, Anna H. Williams, Howard G. Taylor, *the heirs of the body of Rebecca H. Taylor per stirpes* and not *per capita*, Joseph E. Taylor, Anne M. Taylor, Julia K. Taylor, Alice Marsh, daughter of Joseph E. Taylor; *and if any of the said legatees shall have previously died leaving issue, then, in that event, the parent's share is to be equally divided among his or her surviving children.* If, however, shrinkages have taken place in the value of any of my securtities, investments, or properties, then the total amount to be divided, as above set forth, shall be reduced by two-thirds of the amount of such shrinkages. I also direct that the amount to be divided, as above set forth, shall be reduced by the entire amount of the taxes, and of the cost of administering my estate. I hereby authorize my executors, at their option, to pay the bequests above named, to the said above named legatees, either in money, or in securities, stocks, or bonds which may belong to me at the time of my death; or by transferring to them, either separately or as tenants in common, real estate which I may own at my death; and if said bequests are paid in securities, stocks, bonds, or real estate, their value, in such payment, shall be the value placed upon them by the appraisers of my estate. *The above bequests are made with the knowledge of my children, and in accordance with my husband's desire that a portion of my estate should be so divided."*

The particular words in said clause of said will about which the plaintiffs say they are in doubt and of which they ask construction are the words, "the heirs of the body of Rebecca H. Taylor *per stirpes* and not *per capita.*"

It is claimed by certain of the parties in interest that by the said words the children of Rebecca H. Taylor took a share of the estate *per stirpes;* that said words constitute one of the particular and distinct devises of the said will and proof has been offered to show who are "the heirs of the body of Rebecca H. Taylor."

It is shown by the proof that they are the three persons named in said clause immediately before the said words of which construction is sought, to-wit: Edward B. Taylor, Anna H. Williams, Howard G. Taylor. This could only be shown by extrinsic proof. It could not be gathered from the will alone.

It is claimed that by the said clause of said will a share of

the estate is devised to Edward Taylor, of Illinois; a share to Edward T. ugdale; a share to Esther E. McGregor; *a share to Edward T. Dugdale; a share to George H. Dugdale; a share to Emma E. Dugdale; a share to Esther E. McGregor; a share to Howard G. Taylor, and also another share to the said Edward B. Taylor, Anna H. Williams and Howard G. Taylor as "the heirs of the body of Rebecca H. Taylor per stirpes," thus giving to the said Edward B. Taylor, Anna H. Williams and Howard G. Taylor each a share with the others named before them, and with certain ones named after them, and in addition thereto a share to all three of them per stirpes.*

It is claimed by other parties in interest that the words, "the heirs of the body of Rebecca H. Taylor *per stirpes* and not *per capita*," are to be read as part of the one devise to Edward B. Taylor, Anna H. Williams and Howard G. Taylor described by said words as being "the heirs of the body of Rebecca H. Taylor" who are to take *per stirpes* and not *per capita*.

Reading clause one of the will without any evidence outside the will to throw light upon it, it would seem to be probably or almost certainly, the true construction that the provision that the "heirs of the body of Rebecca H. Taylor" are to take a share *per stirpes* and not *per capita*, is in itself a separate bequest to such heirs; but doubt is thrown upon the meaning by the proof that *Edward B. Taylor, Anna H. Williams* and *Howard G. Taylor* are the "heirs of the body of Rebecca H. Taylor," and without further explanation by evidence outside the will that fact would seem to be in some degree in favor of the contention that the words "the heirs of the body of Rebecca H. Taylor" are simply words descriptive of the persons designated as Edward B. Taylor, Anna H. Williams and Howard G. Taylor; though not, I think, conclusive, reading the whole of clause one. But there are other facts shown by the evidence outside the will itself which throw further light upon the question and the meaning of the will.

Clause one of the will itself shows that the testatrix received the estate devised by will from her deceased husband, Henry W. Taylor. Clause one commences with the words, "My late husband, Henry W. Taylor, bequeathed me an estate," etc. The

last sentence in clause one also refers to the will of her deceased husband by the words, "The above bequests are made with the knowledge of my children, and in accordance with my husband's desire that a portion of my estate should be so divided."

The evidence outside the will itself, taken together with the recitals in the will, goes to show that the will was drawn after, in a manner in accordance with, the provisions of the will of the said Henry W. Taylor, deceased, and the will of Henry W. Taylor, deceased, has been offered in evidence, though objected to as incompetent, as throwing light upon the intention of the testatrix, Laura C. Taylor, in her will. Beginning with item two, the will of the said Henry W. Taylor makes bequests to the said persons named in clause one of the will of Laura C. Taylor, deceased, and in the order in which they are there named in the said will of Laura C. Taylor, beginning in item two with the words, "I give and bequeath to my nephew Edward Taylor of Illinois"; item three, "I give and bequeath to my nephew, Edward T. Dugdale"; and so on through the list to item nine inclusive, the said item nine beginning with the words, "I give and bequeath to my nephew, Howard G. Taylor," etc.

The said Henry W. Taylor having in his will by items seven, eight and nine made bequests to Edward B. Taylor, Anna H. Williams and Howard G. Taylor respectively, proceeds by item ten with a bequest to the said Rebecca H. Taylor in the words following: "10th. I give and bequeath to my sister-in-law, Rebecca H. Taylor, or her heirs," and so forth. Then, following the bequest to Rebecca H. Taylor, he makes bequests by succeeding items of his will to Joseph E. Taylor and Anne M. Taylor, Julia K. Taylor and to Alice Marsh in the same order as in the will of Laura C. Taylor, deceased.

It is quite apparent that the will of Laura C. Taylor was written by the testatrix with the will of Henry W. Taylor before her and that she followed it, making her bequests in the same order as those in the will of the said Henry W. Taylor, deceased; but Rebecca H. Taylor being dead at the time of the execution of the will of Laura C. Taylor, she made a bequest to the "heirs of the body of Rebecca H. Taylor *per stirpes* and not *per capita*,"

instead of a bequest to the said Rebecca H. Taylor herself. It is clear to me that when she made the bequest to the "heirs of the body of Rebecca H. Taylor," following the bequests to the persons who are those heirs in their order as they are in the will of Henry W. Taylor, she had item ten of that will before her and purposely made the bequest to the "heirs of the body of Rebecca H. Taylor" in the place, as to order, of the bequest in the will of Henry W. Taylor to the said Rebecca H. Taylor, and that she did not use the words "the heirs of the body of Rebecca H. Taylor" as descriptive of the persons named before, Edward B. Taylor, Anna H. Williams and Howard G. Taylor, who were the heirs of the body of Rebecca H. Taylor.

I can not but conclude that she intended by her will to give Edward B. Taylor a share, Anna H. Williams a share, Howard G. Taylor a share *per capita*, and the three together, as "the heirs of the body of Rebecca H. Taylor," a share *per stirpes* and not *per capita*.

The evidence shows that the will of Laura C. Taylor, deceased, is in her own handwriting, but the technical legal expressions used in the words "the heirs of the body of Rebecca H. Taylor *per stirpes* and not *per capita*," indicate that some lawyer had taken the will of Henry W. Taylor at her request and written the will for her following the provisions of the will of Henry W. Taylor and that she had re-written it in her own hand and executed it, for I can hardly think that she could have used the words "heirs of the body" and *"per stirpes"* and *"per capita"* as they are used. Nor can I think that she intended the words *"per stirpes* and not *per capita,"* to modify the bequests to the said three by name.

But the will as it is written is her will and I can not think that the person who wrote it for her substituted for "Rebecca H. Taylor or her heirs," of item ten of the will of Henry W. Taylor, the words "the heirs of the body of Rebecca H. Taylor *per stirpes* and not *per capita"* with the understanding that they were merely descriptive of the presons previously named, who were in fact the heirs of her body, nor can I think that Laura C. Taylor in writing the will herself used those words as descriptive merely.

That this is the true construction of the will, although it gives to Edward B Taylor, Anna H. Williams and Howard G. Taylor each one share and, in addition, to the three, a share *per stirpes*, is rendered the more probable by another curious fact shown by the will and the evidence outside the will and about which there is no dispute in the case; for following the bequest to the "heirs of the body of Rebecca H. Taylor, deceased," there is a bequest to "Joseph E. Taylor, Anna M. Taylor, Julia K. Taylor, Alice Marsh, daughter of Joseph E. Taylor."

The evidence shows that Anne M. Taylor, Julia K. Taylor and Alice Marsh are, all of them, children of the said Joseph E. Taylor. The will by the words quoted gives to the said Joseph E. Taylor a share, and to each of his said three children a share, and then adds, "if any of the said legatees shall have previously died leaving issue, then, in that event, the parent's share is to be equally divided among his or her surviving children."

The evidence shows that before the death of the testatrix, Laura C. Taylor, but after the execution of her will, the said Joseph E. Taylor died; and by the terms of her will just quoted the children of the said Joseph E. Taylor surviving him, to-wit: the said Anne M. Taylor, Julia K. Taylor and Alice Marsh take each a share of the estate of said Laura C. Taylor, and in addition thereto have the share that was devised by the will to the said Joseph E. Taylor, so that there are two instances in this clause one of the will of Laura C. Taylor in which persons named take twice, about one of the instances there being no dispute.

This last instance also occurs from the following by the testatrix of the will of the said Henry W. Taylor.

All this seems to me to be fairly clear, reading the will of Laura C. Taylor together with the will of Henry W. Taylor.

But it was strenuously contended in argument of the case that the will of Henry W. Taylor was not competent evidence to explain the will of Laura C. Taylor, to enable the court to ascertain the meaning of the said Laura C. Taylor.

As bearing upon this question I quote the following. In

Redfield on Wills, Vol. 2, p. 496, ch. 10, under the title "Extrinsic Evidence in Aid of Construction," it is said:

"The rules for the admission and exclusion of parol evidence in regard to wills are essentially the same which prevail in regard to contracts generally.

"It can not be received to show the intention of the testator except by enabling the court where the question arises to give his language such an interpretation as it is reasonable to presume from the circumstances in which he was placed he intended it should receive; or to put the court in the place of the testator."

In same volume, page 501, speaking of the admission of evidence for the correction of mistakes apparent on the face of wills, *but also upon construction of wills in case of ambiguity*, it is said:

"This question is very extensively discussed by Chancellor Kent in the earlier cases carefully revised. That experienced and careful judge thus expresses the rule of law: 'It is a well settled rule of law that seems not to stand in need of much proof or illustration for it runs through all the books from Cheney's case (5 Co. Rep., 68) down to this day, that parol evidence can not be admitted to supply or contradict, enlarge or vary the words of the will nor to explain the intention of the testator except in two specified cases; 1, *where there is a latent ambiguity arising de hors the will as to the person or subject-matter meant to be described.*' "

In the same volume of Redfield on Wills, p. 621, it is said:

"*The courts do not commonly reject any evidence which in any fair view may be presumed to have a bearing upon the construction of the will, and it is not uncommon for the courts to call for the original draught of a will, or a former will, from which the will in question was made*, and inspect them for the purpose of seeing precisely how the mistake did occur."

At another place on the same page, 621, it is said:

"The only advantage which in such cases can be derived from extrinsic evidence is to enable the court *to place themselves in the precise position of the testator with his knowledge of extraneous facts and circumstances* so as to enable them to give such a construction to the words as the testator himself would have done; *i. e.*, such as will carry out his intention in using

them as far as they can be clearly gathered from the words of the will.''

The author after saying that ''it is not uncommon for the courts to call for the original draught of a will or a former will from which the will in question was made to inspect them,'' etc., makes curious and interesting comment as follows:

''This was done by Lord Brougham, Chancellor, in the important case of *Langston* v. *Langston*, and his Lordship while deciding precisely in accordance with the light thus obtained disclaimed all aid from this source and declared the testimony inadmissible, but where evidence is confessedly inadmissible it would seem more consistent and more dignified as well as modest in the court as a general rule certainly not to examine it.''

The author adds a note on the same page with the quotation from *Langston* v. *Langston*, 2 Cl. & Fin., 240, to which I make reference without quoting.

Reference is made by the author in a note, on page 623, also to *Blundell* v. *Gladstone*, 11 Sim., 467-468, which case it is said ''was heard on appeal before the chancellor and two common law judges and affirmed. 1 Phillips Rep., 279.''

In the report, *Blundell* v. *Gladstone*, 1 Phillips, 279, it is said on page 283: ''It appears that the testator had made two former wills, one in the year 1821 and the other in the year 1827.'' A statement is then made of the contents of those two wills as bearing upon the question in the case of *Blundell* v. *Gladstone*, which was a case of uncertainty as to who was intended as the devisee named in the will. It is said on page 284:

''*From both these wills it is collected that the testator knew* the name of Mr. Thomas Wells' next brother to be Joseph, and from the will of 1827 that having selected the second son of Mr. Joseph Wells the present plaintiff as the object of his devise he knew how to describe him,'' etc.

See, also, pages 287-288 and other pages.

These statements are from the opinion of the judge below and the Lord Chancellor in deciding the case upon the appeal said, page 289:

''We are much obliged to the learned judges for their assistance on this occasion and for the attention they have paid

to this question. I entirely concur in the opinion which they have so clearly and so fully expressed;'' proceeding to state the case.

It is said in Redfield on Wills, Vol 1, page 573, under ''Latent Ambiguities and the Mode of their Removal'':

''The greatest scope for the admission of parol evidence in explanation of the intention of the testator arises in regard to what are denominated latent ambiguities. These are so called since they are not apparent upon the face of the will *but arise from the proof of facts outside the will showing that the words of the instrument although apparently definite and specific in themselves are nevertheless susceptible of an application with equal propriety to two or more different subjects or objects.''*

The ambiguity in the will of Laura C. Taylor arises from the proof that the three persons previously named are ''the heirs of the body of Rebecca H. Taylor.''

In the same volume, page 581, is an interesting note upon a doubt expressed by, Blackburn, J., in the case of the will of Joseph Grant, as to the competency of certain extrinsic evidence. And in the note it is said:

''We are certainly not able to comprehend the ground of his hesitation'' etc. ''It must rest upon some doubt or hesitation in regard to the fact whether the case is strictly one of latent ambiguity or only one of defective description to be aided in its construction by placing the court in the position of the testator, at the time he made his will, both as to his property and the person whom he intended to benefit. For if it were clearly a case of the former character'' (latent ambiguity) ''there could be no question upon the weight of existing authority in the English courts, that *all the evidence offered was admissible.* But the case seems to us clearly one of latent ambiguity although not strictly one of equivocation, *but no doubt in either view the proof of the surrounding circumstances was admissible.''*

It is stated in Jarman on Wills, Vol. 1, p. 443, 6th Ed., that, *''Evidence of all the material facts in the case* is admissible to assist in the exposition of the will.''

It is stated in Jarman on Wills, Vol. 1, star pages 391, 392, 393 *that extrinsic evidence is admissible to prove or repel double portion.*

On page 392, it is said:

"Such evidence may also be adduced to repel the presumption as distinguished from an express declaration against double protions."

It is said also on the same page:

"In all these cases parol evidence is admissible to repel the presumption; counter evidence is also admissible in support of it."

Now in the will of Laura C. Taylor, clause one, there is clearly stated a bequest to "the heirs of the body of Rebecca H. Taylor *per stirpes* and not *per capita*."

As the basis of any claim that these words are descriptive of persons previously named, extrinsic evidence is necessary because it is admitted that not all persons previously named are heirs of the body of Rebecca H. Taylor; and it is shown by extrinsic evidence, and could not be ascertained in any other way, that only three of the persons previously named answer that description, to-wit, Edward B. Taylor, Anna H. Williams and Howard G. Taylor. But the fact that these three are in fact heirs of the body of Rebecca H. Taylor is not necessarily conclusive of the claim that the words "the heirs of the body of Rebecca H. Taylor *per stirpes* and not *per capita*," are simply descriptive of these three; and I think "counter evidence" must be admissible to show the real intention.

I am inclined to think upon consideration that reading the will just as it is, except with the knowledge that the three are the heirs of the body of Rebecca H. Taylor, the words "the heirs of the body of Rebecca H. Taylor" should not be held to be descriptive, but to constitute a separate bequest.

But evidence having been offered to show that the three persons named are the heirs of the body of Rebecca H. Taylor, it would seem to be competent that any other evidence of circumstances existing at the time of the execution of the will "which in any fair view may be presumed to have a bearing upon the construction of the will," may also be considered, and I can not but think that the will of the deceased husband of the testatrix from whom she received the estate and to which will reference is made by her in clause one of her will, she reciting that she made her bequests in accordance with her said husband's de-

sire that a portion of her estate should be so devised and with the knowledge of her children, is competent.

Leaving the will of Henry W. Taylor out of consideration, I would still be inclined to think in view of the whole of clause one of the will of Laura C. Taylor that the words, "the heirs of the body of Rebecca H. Taylor *per stirpes* and not *per capita.*" constitute a separate devise to such heirs in addition to the individual bequests to them immediately preceding the said words, but taking into consideration the will of Henry W. Taylor it would seem quite certain that such is the proper construction.