**McGILL et al., Appellees,**

v.

**ROUSH et al., Appellants.**

[Cite as *McGill v. Roush* (1993), 87 Ohio App.3d 66.]

Court of Appeals of Ohio,
Champaign County.

No. 92 CA 25.

Decided April 7, 1993.

*Houston & Harris* and *Henry W. Houston,* for appellees.

*Wagner, Maurice & Davidson* and *Allen R. Maurice,* for appellants.

---

F<span>AIN</span>, Judge.

Defendants-appellants, Ivan Leo Roush, Beatrice Roush, Riley W. Roush, and Betty Roush, appeal from a decision ordering a judicial sale of land owned in common with the plaintiff-appellees Ned and Martha McGill.

We conclude that there is no evidence to support the trial court's finding that the commissioners understood and fulfilled their statutory duty to make partition, and that the commissioners failed, in any event, to provide the trial court with a factual basis for their conclusion that the land could not be partitioned without manifest injury to its value.

I

Appellees Ned and Martha McGill are owners of an undivided one-half interest in property, some five hundred forty-four acres in size, four hundred seventy-five of which is tillable farmland. The land also includes four residence properties, and approximately twenty-five acres of creeks, eleven acres of roads, and eight acres of wasteland. Appellants Ivan and Beatrice Roush own a one-quarter interest, as do appellants Riley and Betty Roush. The appellees originally sought partition.

Each party selected a commissioner. Those two commissioners chose a third commissioner. None of them had served as a commissioner in a partition case before being selected.

The trial court issued an order finding that the appellants could present their plan for partition to the commissioners. The court then issued a writ of partition, directing the sheriff and the commissioners as follows:

"The commissioners shall set off to the plaintiffs their one-half interest in said real estate and to the defendants their respective one-fourth's interest * * *. In the event that the commissioners hereto certify that in their opinion the estate cannot be divided according to the demand of said writ without manifest injury to its value, then they shall appraise the estate and set forth the dollar value of the acreage."

After finding that the land could not be divided without "manifest injury to its value," the commissioners appraised, in fee simple, the farm's total market value at $713,000. The commissioners' finding appeared unanimous, since all three commissioners signed the writ of partition indicating that the land could not be divided without injury, and submitted the following appraisal:

IMPROVEMENTS

| | |
|---|---|
| 3045 State Route 29 Urbana, Ohio Estimate of Market Value = | $ 48,000 |
| 3635 West State Route 29 Urbana, Ohio Estimate of Market Value = | $ 75,000 |
| 5222 Wesley Chaple [sic] Road Urbana, Ohio Estimate of Market Value = | $ 50,000 |
| 5380 Wesley Chaple [sic] Road Urbana, Ohio Estimate of Market Value = | $ 45,000 |
| Total Estimate of Market Value of Improvements = | $218,000 |

REAL ESTATE

| | |
|---|---|
| Nontillable acreage, 69 acres × $500 per acre = | $ 34,500 |
| Tillable acreage, 330 acres × $1,000 per acre = | $330,000 |
| Tillable acreage, 145 acres × $900 per acre = | $130,500 |
| Estimate of Market Value of the Subject Property as of September 23, 1991 is | $713,000 |

---

The trial court ultimately characterized the commissioners' findings as two to one against dividing the land, and in its journal entry of April 17, 1992, the trial court found that "[t]he confusion by the Commissioners about the scope of their duties is harmless error in the opinion of the Court in view of the decisions reached by the Commissioners." The trial court also found that (1) "Commissioners Nuzum and Simpson were firm in their resolve under oath that they could not as Commissioners fairly and equitably and evenly divide the real estate in question"; (2) "Commissioners Nuzum and Simpson believe that any division by the Commissioners would damage the real estate as a whole"; and (3) "Even though the Commissioners expressed limited knowledge on their directive to physically divide the property if possible, a majority of the Commissioners expressed the unwavering view that as Commissioners they were not able to fairly divide the property in the present case."

The commissioners' "unwavering views" appear to have consisted of their stated beliefs, without any reference to facts, that the land was indivisible. At the first hearing, on November 6, 1991, Commissioner Simpson testified that "I don't believe the property can be divided the way it lies without hurting its value in some way." Commissioner Nuzum, when asked by the trial court at the same hearing whether "the property could be divided without manifest injury to its value," replied "I didn't feel it could be." And when examined by counsel for the appellants, Commissioner Nuzum testified as follows:

"Q. But you placed values on it that would permit a division of?

"A. Yes, and then that might not even if they got among themselves and agreed, it might not be 100 percent fair. I don't know. There's some things there to weigh in bargaining something like that, that it would be pretty difficult.

"Q.  When you established the value, Mr. [Nuzum], did that, in your opinion, those were as you already stated fair market values for those components?

"A.  Yes.

"Q.  And for instance if they were going to be sold individually or as individual tracts that would be a fair value?

"A.  Of course it would be—you would still have to break down the thing further because we appraised the houses separately * * *.  Then we appraised the land in two different categories * * *.  It would be difficult to measure it out without an engineer or somebody * * *.

"Q.  I understand.  But your testimony to the court was that you did appraise it in a manner that it could be divided if the parties agreed on how to divide it?

"A.  That was kind of our feeling, yes, that they can take the figures we put down if they wanted to deal among themselves.  I don't know any better way or more equitable way for them to come to the conclusion on because I don't think we could put that or draw lines that would do what maybe—whether it would be right when we drew it.

"Q.  Again taking the values that you placed on all the assets it would be possible?

"A.  It would be possible."

Dissenting Commissioner Kite testified, during the second hearing, on April 14, 1992, that he had "probably signed [the writ] because the other two went along with it."

During the same hearing the trial court again questioned Commissioner Nuzum on his understanding of his duties as commissioner.  The questioning and testimony, in pertinent part, are as follows:

"Q.  When you were serving as a commissioner, did you believe that you had the authority to divide the land if you thought it could be done?

"A.  I really—my interpretation of this thing was when I was engaged to appraise the farm we were to appraise the farm in its entirety, which we did * * *.

" * * * *

"Q.  Why did you make a total appraisal of the property?

"A.  I thought that's what we were supposed to do was appraise the entire property, the farm and we broke it down into categories so that I think the consensus of opinion was that by putting different values on it and so forth and a total value that if the party so desired they could bargain or position among themselves rather than for us to try to divide this thing, and I'm not sure the

appraisers could come up with a division on that type of farm that would be 100 percent fair. I think it would take a lot of experts better than we are combined to put that together. If it was one square section of land like you have in the prairie or somewhere you simply looked across the whole thing, looked all the same, everybody could draw a line across it. There's a lot of variation in this farm and ditches and creeks and waste ground and there's old buildings on it that affect all these things too. There's many factors there that I don't see how I could do that in good conscience, come up with a division that would be fair to everybody."

Appellant's counsel then asked Nuzum:

"Q. Did you understand you had the authority to divide it?

"A. Well, I'm not sure whether everybody felt we had the authority. Maybe we did. When we looked at it and so forth I think our general opinion was we couldn't divide it and do it equitably."

Commissioner Simpson also testified before the trial court, in pertinent part as follows:

"Q. Is your position the same as commissioner [Nuzum's] or different?

"A. Well, in my opinion the key word on this particular property is equitably divided and the way this property is laid out I feel that it would be almost impossible to divide it equally and not diminish the whole."

After the trial court adopted the commissioners' findings, the appellants and appellees both elected to take the property at the appraised value, and as a result, the trial court ordered the judicial sale of the farm. From that order, the appellants appeal.

## II

The appellants' first assignment of error is as follows:

"The individuals appointed as commissioners were not clear as to their responsibilities and duties, and were never instructed by the court as to their duties."

The appellants' fifth assignment of error is as follows:

"There should not be a sale of the land because there is no evidence that a partition would cause any manifest injury to the property."

Essentially, the appellants contend that their rights to partition were prejudiced because the commissioners did not attempt to make a partition, and that there is no evidence that an equitable partition is impossible. The appellants also argue that the commissioners' failure to provide the trial court with a factual basis for their conclusion prejudiced the appellants' right to partition. Finally,

the appellants contend that the trial court has a duty to instruct the commissioners and that failure to do so, in this case, prejudiced the appellants.

Historically, it was the sheriff who instructed partition commissioners. *Ellis v. Hicks* (1884), 9 Ohio Dec.Rep. 240, 241. In the case before us, the writ of partition directed to the sheriff contained instructions to the commissioners that the land was to be divided unless partition without injury to its value was impossible. Testifying on whether he read the writ of partition, Commissioner Simpson said, "I did not read it at the time."

When the trial court asked Commissioner Simpson, "Did you understand that when you went out you had the authority to divide the land if you felt you could do so fairly?" Simpson responded, "No sir, I did not understand we had the authority. I was of the impression that we were there to make recommendations if we felt that they were called for."

Although the writ of partition contained a clear directive that the commissioners "shall" divide the land and also instructed the commissioners on their appraisal duties if partition was impossible, nothing in the record supports the trial court's finding that the commissioners' ignorance was "harmless error." The commissioners' testimony that they believed that the land could not be partitioned fairly did not mitigate their failure to read or understand the writ of partition or cure their failure to carry out their statutory partitioning duties, which included the duty to explore every reasonable possibility of equitably dividing the property.

R.C. 5307.06 governs the partitioning duty of commissioners, and reads in part as follows:

"In making a partition the commissioners provided for in section 5307.04 of the Revised Code shall view and examine the estate, and, on their oaths, having due regard to the improvements, situation, and quality of the different parts, set it apart in such lots as will be most advantageous and equitable."

R.C. 5307.09 governs the appraisal duty of commissioners, and reads in part as follows:

"When the commissioners provided for in section 5307.04 * * * are of opinion that the estate cannot be divided according to the demand of the writ of partition without manifest injury to its value, they shall return that fact to the court of common pleas with a just valuation of the estate."

R.C. 5307.06 has been construed as creating "a mandatory duty" on commissioners to "come forward with a plan for the division of the property," and if the commissioners "remain of the opinion that the division will damage the value," they must "be prepared to state the facts upon which their opinions are based."

*Hendrix v. Hendrix* (Aug. 26, 1981), Warren App. No. 422, unreported, 1981 WL 5176.

We agree with the reasoning of the *Hendrix* court. However, we note that it is doubtful that there is a "mandatory" duty for commissioners to provide a plan of partition *after* the commissioners have made a good faith effort to make a most equitable partition but find that, ultimately, they cannot. Then, a failure to provide a plan of partition to the trial court would not violate R.C. 5307.04 *et seq.*, provided that the commissioners' report contained a sufficient factual basis to allow the trial court to review the commissioners' efforts. We agree with the *Hendrix* court's holding that the commissioners must provide a factual basis for their conclusions.

It is also reasonable to consider commissioners as having responsibilities analogous to those of referees. As contemplated by Civ.R. 53(E), referee reports must contain sufficient information to enable a trial judge to render his own decision. *Loque v. Wilson* (1975), 45 Ohio App.2d 132, 74 O.O.2d 140, 341 N.E.2d 641. Because insufficient information impedes appellate analysis, the trial court cannot adopt a referee's report unless a statement of facts showing the basis for the referee's decision is included. *Zacek v. Zacek* (1983), 11 Ohio App.3d 91, 93–94, 11 OBR 143, 145–146, 463 N.E.2d 391, 395–396. The partition power of commissioners has been characterized as "quasi-judicial." *Forest Park Properties, Inc. v. Pine* (1966), 9 Ohio App.2d 348, 355, 38 O.O.2d 427, 431, 224 N.E.2d 763, 768. Commissioners have "very large powers" in making partition. *Terrell v. Leonard* (1910), 17 C.C.(N.S.) 89, 92.[1] However, as with referees, commissioners' powers are ultimately subject to court authority; commissioner partition reports may be rejected, modified, or approved by the trial court.[2] An order partitioning property extinguishes a tenant's rights in the whole property, and establishes the tenant's exclusive right of ownership in the part of the property set off to him. Since it is an order creating and extinguishing rights in specific property, it is an exercise of the judicial power, and cannot be entirely delegated to a nonjudicial officer. A judge must remain ultimately responsible for the exercise of the power of partition.

---

1. In *Terrell*, the court found that commissioners did not abuse their "very large powers" of equity in dividing the land unequally among three cotenants, when the two cotenants awarded one-seventh parcels were satisfied with the report of the commissioners, because "the division made by the commissioners * * * is, under all the circumstances, the one most advantageous and equitable that could possibly be made." *Terrell, supra,* 17 C.C.(N.S.) at 92.

2. A potential exception is when a partition is made by commissioners and is accepted by the cotenants without any further court action. After a period of acquiescence, the partition may become valid and beyond the power of a court to review. See *Piatt v. Hubbell* (1831), 5 Ohio 243.

We find that, in partition proceedings, commissioners must provide a sufficient factual analysis, similar to the report and recommendation provided for in Civ.R. 53(E), in order to allow the trial court to make an independent determination of the basis for the partition. Otherwise, it would be impossible for any court to discover whether R.C. 5307.06 has been complied with.

It would be sufficient for the commissioners to answer the question: why is it impossible to divide the land? They may successfully answer that question by testifying or reporting that the "assembly valuation" is "greater than the total value" of the land if divided. See *Forest Park, supra,* 9 Ohio App.2d at 354, 38 O.O.2d at 431, 224 N.E.2d at 768.

We observe that the commissioners cannot comply with R.C. 5307.04 *et seq.* without making some factual findings supported by calculations or the facts themselves, regarding the manifest injury resulting from a partition. The injury must be shown, not merely stated as a conclusion.

Cases of inequitable partition generally feature one of two types of injury to the land value. For example, the sum of the divided property may be less than the value of the whole. See *Forest Park, supra.* Or, the commercial use of a property may be prevented upon any partition. See *Miller v. Rouse* (1900), 7 Ohio N.P. 300, 2 Ohio Dec. 358. In either case, it would be improper for commissioners merely to state their conclusion without showing their calculations or concrete reasons for deciding that partition is impossible.

Finding partition impossible cannot be accomplished without (1) calculating the amounts demonstrating that the land cannot be divided without the sum of its parts remaining less than the value of the whole, or (2) determining the particular reasons why a commercial operation on the land would be prevented from continuing if the land were partitioned.

Here, the commissioners' report contained an appraisal of the property as a whole. A plan of partition, submitted by appellants with the approval of the trial court, was rejected outright by the commissioners, without any factual basis for the rejection. Nothing in the record shows that the commissioners attempted to calculate the values of the plan's divisions or to evaluate the plan in any substantive way.

The transcripts show that the trial court's characterization of the commissioners' confusion as harmless error is not supportable. At no time did a commissioner testify that he tried to make a partition. Except for testifying about their ultimate conclusion, the commissioners' vague and sometimes nonresponsive testimony indicates that they failed to understand and to complete their statutory duties. For example, when the trial court asked Commissioner Nuzum

a direct question: "Did you make a determination on whether the property could be divided without manifest injury to its value?" Nuzum testified that "I didn't feel it could be."

The appellees, in their brief, argue that partition would "break up" the land's corn, bean, and wheat bases. In a prior motion to the trial court, the appellees presented detailed facts supporting their argument that the farm would be more profitable if left undivided.

However, the commissioners never recorded any of these facts in their report containing the appraisal, nor did the commissioners mention any of these facts during the two hearings. We conclude that the record lacks any evidence that the commissioners followed R.C. 5307.06 and actually tried to divide the land on an equitable basis before forming their opinion.

Another aspect of the commissioners' confusion was their apparent understanding that they were not to partition the land unless they could do so on a perfectly equitable basis. Commissioner Nuzum testified, at the second hearing, that he was "not sure the appraisers could come up with a division on that type of farm that would be 100% fair." Commissioner Simpson testified at the same hearing that "the way this property was laid out I feel that it would be almost impossible to divide it equally and not diminish the whole."

R.C. 5307.06 does not require the commissioners to achieve perfect equity. It is up to the trial court, not the commissioners, to produce true equity in partition, since the commissioners' report is advisory and subject to court approval. Nor does R.C. 5307.04 *et seq.* allow commissioners to choose not to make partition if the land is very difficult to divide. Instead, commissioners are required to make partition unless there is no way to avoid manifest injury to the value of the property. R.C. 5307.09.

Ohio law favors the partition of the property over the sale of the property. *Stiles v. Stiles* (May 10, 1991), Auglaize App. No. 2893, 1991 WL 82894. The "primary object of the statute is to effect an actual division of the property among the owners." *Tabler v. Wiseman* (1853), 2 Ohio St. 207, 213. Because Ohio law favors partitions and because partitions must ultimately be equitable, owelty is an important tool for a trial court to produce "perfect" equity from a "most" equitable partition by commissioners.

Where commissioners make a partition which is not perfectly equitable, but the trial court finds that the partition is most equitable, under R.C. 5307.06, and adopts the commissioners' report, the trial court, acting in equity, may award an owelty to a coparcener who, in the trial court's estimate, is receiving the *slightly less equal* parcel of land. According to R.C. 5307.04 *et seq.*, the trial

court may approve a partition which is "most" equitable, as provided by the commissioners, or, instead the court may use its inherent power in equity.

Equitable partition proceedings originated in the English High Court of Chancery and are, unlike partitions dealing with controverted titles, within the equitable jurisdiction of courts.  See *Gay v. Parpart* (1883), 106 U.S. 679, 688–693, 1 S.Ct. 456, 463–468, 27 L.Ed. 256, 260–261.  The remedy of partition, throughout the United States, is statutory, and partition is generally held to be one of the subjects of settled equitable jurisdiction.  Partition, American Jurisprudence 2d (1987) 66, Partition, Section 97.  At least one other jurisdiction has allowed a court sitting in equity to award owelty where the partition statute did not expressly provide for payment of owelty.  See *Rothert v. Rothert* (1982), 109 Ill.App.3d 911, 65 Ill.Dec. 387, 441 N.E.2d 179.  In *Rothert*, the Fourth District Court of Appeals in Illinois held that "the inherent power of the court sitting in equity to make such a division has long been recognized."  *Rothert, Id.,* 109 Ill.App.3d at 916, 65 Ill.Dec. at 390, 441 N.E.2d at 182.

Although owelty may improve the equality of a partition, it is not applicable where commissioners provide the court with facts supporting the commissioners' conclusion that there is no way to produce even a "most" equitable partition.  In that instance, or when the commissioners provide a factually based partition plan, the trial court's adoption of the commissioners' report should not be disturbed unless there is an error "apparent upon the face of the record."  See *Smith v. Barber* (1836), 7 Ohio, Pt. II, 118, 122.

The general rule is that the trial court will seldom fail to approve the action of the commissioners except in the case of intentional misconduct, corruption, partiality, an exceeding of their authority, gross inequality, or the like.  *Forest Park Properties, supra,* 9 Ohio App.2d at 353–354, 38 O.O.2d at 430–431, 224 N.E.2d at 767–768.  And where commissioners recommend partition and the trial court so orders, the trial court's order will be affirmed unless the record shows that the partition is defective.  *Kirby v. Kirby* (1895), 12 Ohio C.D. 736.

We hold that there was insufficient evidence in the record for the trial court (1) to characterize as harmless error the commissioners' misunderstanding of their duties under R.C. 5307.04 *et seq.,* (2) to adopt the commissioners' findings that partition could not be made without manifest injury to the value of the land, and (3) to find, by implication, that the commissioners carried out their statutory duty and attempted to partition the land.

The appellants' first and fifth assignments of error are sustained.

### III

The appellants' second assignment of error is as follows:

"Defendants-appellants have been irreparably prejudiced by their attorney not having notice of and being in attendance at the hearing on the motion filed on the defendants-appellants' behalf."

The failure to give the appellants' attorney notice of the November 6, 1991 hearing was harmless error. The appellants were afforded the chance, at the April 14, 1992 hearing, to examine every commissioner, all three of whom were present at both hearings.

The appellants' second assignment of error is overruled.

### IV

The appellants' third assignment of error is as follows:

"The court should have appointed three new commissioners when it became aware of the fact that the commissioners did not understand their duties."

If commissioners are appointed in partition and make a report that is set aside by reason of a slight defect, it is not error to appoint the same commissioners a second time. While they are acquainted with the property and have formed definite ideas as to the proper method of partitioning it, they may nevertheless be "disinterested." *Terrell v. Leonard* (1910), 17 C.C.(N.S.) 89.

Here, even if the trial court had disagreed with the commissioners' findings, under the rule in *Terrell,* the court would not have had to appoint new commissioners. A trial court's finding that the former commissioners were "disinterested" would not be reversible error absent an abuse of discretion, which we do not find from this record.

The appellants' third assignment of error is overruled.

### V

The appellants' fourth assignment of error is as follows:

"Defendants-appellants should have been given a hearing to contest the commissioners' report and present evidence that the land, in fact, could be partitioned."

The right of partition, either under statute or in equity, is remedial and should be liberally construed. *Black v. Sylvania Producing Co.* (1922), 105 Ohio St. 346, 137 N.E. 904. "Since the partition of property is to be favored over the sale of property, when a party objects to a commissioner's report, that party

should have a right to a hearing to contest the commissioner's findings before the property is appraised and subsequently sold." *Stiles, supra,* 1991 WL 82894, at 3.

The appellants filed a motion with the trial court in January 1992, asking the court to deny confirmation of the commissioners' report, appoint three new commissioners, or, in the alternative, set a hearing for the appellants to present evidence that the land can be partitioned according to the writ of partition without manifest injury to its value. The trial court held a hearing subsequent to the appellant's motion. After the commissioners testified, the court asked the appellants' counsel, "Counsel for defendants desire anything else this morning?" Appellants' counsel replied, "No your honor." The hearing was then concluded.

We agree, following the decision in *Stiles,* that the appellants must have an opportunity to contest the findings of commissioners. Here, it is apparent that the appellants were given the opportunity to produce evidence and to argue that the land could, in fact, be partitioned equitably and without injury, and cannot argue now that they were deprived of that opportunity. The appellants' fourth assignment of error is overruled.

## VI

The appellants' first and fifth assignments of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

GRADY, P.J., and WOLFF, J., concur.