## Morris, et al. v. Daniel.

(Decided March 4, 1919.)

### Appeal from Campbell Circuit Court.

1. Easements—Prescription.—It is incumbent upon one claiming an easement or roadway over the lands of another, to establish his right thereto, by grant or prescription.

2. Easements—Commissioner's Report—Failure to Confirm.—In a suit for partition of lands the commissioner appointed to divide the property, made a report in writing dividing the lands into four parts, and designating by metes and bounds a passway from lot No. 4, over and across lots Nos. 1 and 2 to the public highway. This report was filed with the clerk and placed with the other papers in the partition suit, but the report was never recorded, and, the judgment in the case did not mention the roadway recommended in the report, nor did the deeds made by the commissioner to the allottees provide for such roadway. Held, that such unrecorded report of commissioner did not vest in the owner of lot No. 4 an easement over lots Nos. 1 and 2.

3. Easements—Commissioner's Report.—A commissioner's report has no force or effect upon the subsequent proceeding where the judgment does not refer to it or the deeds follow the recommendations contained in the report.

WESLEY M. RARDIN for appellants.

OTTO WOLFF and V. O. WILLIAMS for appellee.

Opinion of the Court by Judge Sampson—Reversing.

Edward Morin died in 1878 or 1879, the owner of 370¼ acres of land on the Flag Spring and Alexandria turnpike, in Campbell county. He left surviving him three children and seven grandchildren by a fourth child. Shortly after his death a suit was instituted in the Campbell circuit court for a division of the lands into four parts, in kind, among the three children and grandchildren, and the master commissioner was appointed who made a report in writing accompanied by a plat, to the court subdividing the 370¼ acres into four tracts. In making this division. lots Nos. 1 and 2 fronted on the turnpike, and lot No. 4 was directly behind lots Nos. 1 and 2, and 203 poles away from the pike.

The report of the commissioner, after describing tract No. 4, adds this: "The whole lot No. 4, being 157 acres and 11 poles. There is to be a road used as an outlet from lot No. 4, as represented on the plat, along the division line between lots Nos. 1 and 2, whose bearing is N. 69½ E.; said road is to be 20 feet in width, beginning at a stone in the northeast line of lot 4, second corner to lot No. 1, and fourth corner to lot No. 2; thence running with said division line a distance of 203 poles to the Flag Spring and Alexandria turnpike, 10 feet being granted on each side of the division line.

"All of which is respectfully reported."

This report appears to have been duly lodged by the commissioner with the papers of the case, and filed by the clerk and made a part of the record in the case, and confirmed by the court, but never recorded in the manner provided by law. No copy of the judgment in the partition suit, or deeds made by the commissioner to the heirs, is made part of this record. So far as this record shows the judgment did not follow the report of the commissioner with respect to the roadway contained in the report copied above nor did either of the deeds made by commissioner contain any reference to said road or passway.

Immediately after the division was made, the parties to whom the tracts were allotted took actual possession and enclosed the tracts by fencing and placed other improvements on the land. There was no roadway or traveled way along the line described in the report at the time the report was made, the judgment entered and

deeds executed by the commissioner, and there has never been a travelway along the line designated for the road from the time of the making of the report to the present day, but there was a travelway which zigzagged over lot No. 1 from the line of lot No. 4 to the pike, and which was some two hundred feet or more away from the road designated in the report. The owners of lots Nos. 1 and 2 built various cross-fences through their lands which obstructed the proposed roadway at different points, and a fence was built from lot No. 4 at the point where lots Nos. 1 and 2 joined along the divide between lot No. 1 and No. 2, 203 poles to the pike, thus dividing in the middle the proposed 20 foot right of way from end to end, and that fence stood there for a number of years without objection or complaint from the owners of lot No. 4. Lot No. 4 was given to a daughter, Margaret Morin; lot No. 1 to the heirs of Mariah Briggs, a deceased daughter of Morin, and lot No. 2 to another daughter, Cynthia Morin, in the original division between the heirs of Edward Morin, but each of these persons has sold and conveyed the lands, and appellants, E. J. Morris and Sammie Morris are the owners of tract No. 1, and John R. Nelson and Rob. Daniel own lot No. 2, while G. S. Daniel owns lot No. 4, having acquired title to it in 1910. This action was instituted by Daniels against Morris and his wife, praying a mandatory injunction, commanding the defendants to open the roadway along the line between lots Nos. 1 and 2 from lot No. 4, to the turnpike, by removing all obstructions thereon, such as fencing, and praying that they and their privies in estate be perpetually enjoined from thereafter obstructing or interfering with appellee's use thereof. It is admitted that the roadway, which appellee now seeks to open, was not provided for in the judgment of division which allotted the lands of Edward Morin, and that the deeds made by the commissioner under said judgment did not refer to said passway from lot No. 4 to the pike; and further that none of the mesne conveyances from Mariah Briggs and Cynthia Morin to the present owners contain any reference whatever to said right of way as designated in the commissioner's report.

It would, therefore, appear that appellee Daniel rests his claim of right to the roadway solely and alone upon the provisions and description set forth by the commissioner who divided the land in his report to the Camp-

bell circuit court, and such report, in so far as it affects the roadway, is copied above. The question is: Can a description and recommendation in a report of a commissioner in a suit for partition of land, which is not recorded, become such a part of the proceedings in the partition suit and link in the chain of title of which all subsequent grantees must take notice?

It is well settled that where a right to a roadway is vested by grant or judgment, in partition proceedings, all subsequent purchasers who hold under the grant or judgment, are bound by the road reservation, and the servient estate can not avoid the burden by pleading and proof of non-user of the easement acquired by the grant, or in any manner, except by adverse holding for the statutory period. In the case of Johnson v. Clark, et al., 57 S. W. (Ky.) 474, this court held that non-user of a passway acquired by grant does not destroy the easement in the absence of any act on the part of the owner of the servient estate which is inconsistent with the existence of the easement; and the acquiescence by the owner of the easement in temporary changes in the passway from one route to another for the convenience of the owner of the servient estate, does not operate as an abandonment of the original way granted. See also Dodson v. Meritt, 141 Ky. 155; Speers v. Weddington, 146 Ky. 434; N. P. B. & S. Co. v. Plummer, 149 Ky. 534; List v. Jacoby, 22 R. 757; Boyd v. Morris, 32 R. 645.

It, therefore, appears that nothing less than an adverse and hostile use of the servient estate, wholly inconsistent with the right of the owner of the easement, will start the statute of limitation running, which, when the period has elapsed will extinguish the right. Certainly nothing short of the continued adverse use for the statutory period will establish a right by prescription in the adverse claimant.

Appellants and those under and through whom they claim have owned, held and claimed the land over which the roadway is proposed, adversely, continuously and uninterruptedly for many years and much more than fifteen years next before the commencement of this action. Had the roadway been once actually established along the route in question, appellees and their predecessors would not have lost their right therein by mere non-user, but since no roadway was actually estab--

lished and no grant made thereof, the open, actual, adverse holding of appellants and their predecessors in title is conclusive of the question involved. The fences placed across the proposed roadway as well as the one built from end to end dividing it in two parts amount to a public declaration of disseizin and bars any right which appellees and their predecessors had, if any, at the end of fifteen years from the erection thereof.

But did Margaret Morin, to whom was allotted lot No. 4, in the division of her father's estate, acquire an easement in the roadway in controversy in this action by the mere filing of the commissioner's report of partition, which designated and described the passway? We think not. If the report had been confirmed by the court and recorded in the proper office, no doubt it would have become a link in the chain of title which would have impressed itself upon the muniments thereof, in such way as to have given notice to all subsequent holders of the servient estate that the right to the road existed and was an encumbrance thereon, which right could not have been defeated except by an adverse user or holding for the statutory period. But so far as this record shows the court did not confirm and cause to be recorded the report of the commissioner. It would appear that the court rejected the report in so far as it designated a road from lot No. 4, over lots Nos. 1 and 2 to the pike, because the judgment so far as this record shows did not describe the passway, refer to it or even mention a passway.

Neither did the deeds made by the commissioner of the court, pursuant to the judgment mentioned, describe or give to the grantee of lot No. 4 any right of way or easement in a roadway over lots Nos. 1 and 2. Hence, we conclude that the court rejected at least so much of the report of the commissioner as recommended a passway from lot No. 4, over lots Nos. 1 and 2 to the pike, because if the judgment had adopted the report it would have followed the same in the establishment of the road, and some mention would have been made thereof in the judgment, and the deeds of the commissioner, following the judgment, would also have mentioned and described the right of way. A report of commissioners filed in a suit is only the recommendation or suggestion of the commissioner which the court may or may not accept and confirm. Often the report is wholly rejected or disregarded; sometimes only partly adopted. This report

may have been adopted in all respects except that recommending the road, but since the road is the only thing in controversy in this action, it is not important to inquire what else may have been disregarded or rejected by the judgment. If lot No. 4 did not acquire the roadway in and by the partition proceedings in the Campbell circuit court, as appears to be true, no such right exists or ever existed.

We therefore conclude that the trial court erred to the prejudice of appellants in sustaining the prayer of the petition, granting the mandatory injunction against the present owners of lot No. 1 requiring them to remove the obstructions from the alleged passway, and perpetually enjoining them from obstructing the same in the future. Upon the record, the judgment should have been for appellants, and the petition dismissed.

Judgment reversed for proceedings consistent with this opinion.