Forest Park Properties, Inc., Appellee, *v.* Pine et al.,
Appellants.

[Cite as Forest Park Properties, Inc., v. Pine, 9 Ohio App. 2d 348.]

(No. 3070—Decided December 6, 1966.)

*Messrs. Young, Pryor, Lynn, Strickland & Falke,* for appellee.

*Mr. Thomas G. Kennedy* and *Mr. Hugh H. Altick,* for appellants.

CRAWFORD, J.   This is an appeal on questions of law and fact from orders of the Court of Common Pleas sustaining plaintiff-appellee's motion to affirm, and overruling defendants-appellants' motion to set aside a majority report of commissioners in partition.

The majority report by two commissioners found that the interests of the parties in the real property involved, as holders of the fee simple title and as lessors under a 99-year lease, cannot be equitably separated through a partition by metes and bounds without manifest injury to the value of the whole; and the report appraised the value of the property involved at $800,000.

The minority report of the third commissioner proposed a division of the property by metes and bounds into two tracts, one to plaintiff, the other to the defendants as a group in the same proportions as their original interests in the whole; this report was in accordance with the prayer of defendants' answer.

The defendants, appellants herein, contend that the property, consisting of a tract of 43.134 acres, can and should be divided by metes and bounds.   There was some challenge to the formula used in appraisal, questioning what if any consideration should be given to buildings and improvements owned and used by lessee, but counsel for defendants stated that, if the property cannot be physically apportioned, the appraisal may stand.

Questions had arisen earlier in the case relative to the procedures followed by the commissioners respecting their oaths and their failure to meet together.   However, these problems were resolved, and it is agreed that the procedures followed in preparing to make the report which was ultimately approved by the court, and now before us, were regular.

The first question to be determined is the nature of the property sought to be partitioned.   Plaintiff contends that the

parties are the owners in fee simple of the premises, subject to the 99-year lease.

Defendants argue that inasmuch as the rents are now being divided according to the respective proportions of ownership, there has already been an agreed partition or division of their only interests as lessors, so that all that now remains to be partitioned or divided among them are their shares in what they designate as the "reversion"; and that an actual partition of the land in which this reversion exists can be made equitably by metes and bounds between plaintiff and defendants without injury to the value either of the whole or of the separate parts.

If the only interest of the parties were a reversion, it alone could not be partitioned and the prayers of both the petition and the answer would have to be denied. 41 Ohio Jurisprudence 2d 569, Partition, Section 27; Freeman on Cotenancy & Partition, 3d Ed., 582, Section 440. Only those in possession are entitled to partition. 41 Ohio Jurisprudence 2d 556, Partition, Section 18; *Tabler* v. *Wiseman* (1853), 2 Ohio St. 207; Freeman on Cotenancy & Partition, 3d Ed., 594, Section 447. For this purpose the physical possession of a lessee is the possession of the lessor. *Rawson* v. *Brown* (1922), 104 Ohio St. 537.

The division of the rents in proportion to the respective ownership interests is not a partition. It does not in any way change the nature or extent of the present ownership; it simply recognizes it.

The premises were previously owned by Markey-Swallow Land Co., a corporation, in which these parties all owned stock. On October 1, 1959, the corporation, as lessor, executed a 99-year lease, with option to purchase, to Park Plaza, Inc., lessee, which now operates a shopping center on the premises, with accompanying mall, walks, parking area, common entrances and exits, and a common utility system, including sewer and water.

On October 8, 1964, in preparation for dissolution of the Markey-Swallow Land Co., that corporation conveyed the property, subject to leases, etc., of record, by separate individual deeds to each of the parties, conveying to each of them an undivided interest proportionate to his or its share or shares of stock in the corporation, as follows:

To plaintiff Forest Park Plaza, Inc.—84/168
To defendant Saul Feltzin—38/168

To defendant John P. Naas—19/168
To defendant Robert L. Pine—19/168
To defendant Thomas G. Kennedy—8/168.

Also on October 8, 1964, the same day the foregoing deeds were executed, the Markey-Swallow Land Co. assigned its interest as lessor of the premises in the 99-year lease to these same parties, specifying their respective interests therein to be in the same proportions as the division of ownership reflected in the deeds.

The case of *Rawson* v. *Brown* (1922), 104 Ohio St. 537, involved partition of real estate upon which there was a lease for 99 years, renewable forever, with an option to purchase after 25 years. The Supreme Court there laid down the principles which have continued to govern such situations, in the following language:

"1. A permanent leasehold estate renewable forever is not a fee simple although under the Ohio statutes it has many of the incidents thereof. The fee simple remains in the lessor, his heirs, devisees or assigns.

"2. Where possession of real estate has been given to a lessee under the provisions of a lease, the lessee holds for the lessor; the possession of the former is the possession of the latter.

"3. The heirs and devisees of a lessor who are entitled to the rents accruing from time to time under a lease for 99 years renewable forever, are entitled to partition under the statutes of Ohio. An option to purchase after 25 years which is included in the lease is no obstacle to that right until the option is exercised."

In our present case, where the lease is not renewable forever, the rights of the owners are surely no less than those in the *Rawson case*.

Certain other cases not involving partition, but concerned primarily with dower interests in and taxability of 99-year or permanent leaseholds, contain language which emphasizes those incidents of fee simple which are found in a permanent leasehold. But these cases have never, so far as we can learn, been held to affect the principles laid down in the *Rawson case*, which in the first paragraph of the syllabus also recognizes these incidents of a permanent leasehold. See *Ralston Car Co.* v. *Ral-*

*ston* (1925), 112 Ohio St. 306, 39 A. L. R. 334; *Carney, Aud.,* v. *Cleveland City School District Public Library* (1959), 169 Ohio St. 65; *Welfare Federation of Cleveland* v. *Glander, Tax Commr.* (1945), 146 Ohio St. 146.

Careful examination of the present lease discloses it to be in the fullest sense a lease from the owner of the fee as lessor. It is not a conveyance of an intervening estate so as to render the lessor a mere reversioner. The obligations imposed upon the lessor are those ordinarily imposed upon the owner, which can be performed only by the owner; whereas the rights secured to the lessor and imposed upon the lessee for lessor's benefit are those ordinarily provided for, and of value only to, the owner.

There are, for example, the covenant by lessor for quiet enjoyment, the obligation to keep the fee simple free from encumbrance, and to convey, upon exercise by lessee of the option to purchase, for a price then to be determined on the basis of income from the property.

There is to be a fixed rental and also a twenty per cent "or overage" on the rent paid to lessee by subtenants with right in the lessor to make an audit.

The lessor conveys to the lessee the buildings, improvements and additions, subject to lessor's lien, the same to become the property of lessor upon termination of the lease.

In addition to payment of rent, the lessee undertakes to do many things for the benefit of lessor or owner—things in which only an owner would be interested. Lessee must protect lessor against mechanic's liens and carry insurance of various kinds for the benefit of both lessor and lessee; lessee must construct 309,150 square feet of building space and, in case of damage or destruction to a building, immediately restore the same, provide parking area, and obtain lessor's approval for any change in name of the shopping center; if lessee mortgages or encumbers its leasehold and property for development and improvement, the mortgagee must notify lessor of any default, whereupon lessor may pay or assume the obligation and the lease shall terminate; and lessee must not commit or suffer waste, except the demolition and removal of old buildings.

Lessor retains the right of re-entry upon lessee's breach of any covenant, and in case of termination for such breach by lessee, all buildings, improvements and contents become the

property of the lessor. Lessor may enter and examine the condition and usage of the premises and, in case of damage by fire, windstorm, etc., may make emergency repairs at lessee's expense.

It is provided that the covenants, agreements and obligations contained in the lease are covenants running with the land.

There is provision for arbitration in case of dispute. In such event, the arbitrators are to have access to all pertinent books and records of lessor and lessee.

Lessee covenants not to use the premises for any unlawful purposes, certain rights being reserved to lessor in the event they are so used, and to indemnify lessor against loss, damage, etc., because of any accident, loss or damage by lessee's use of the premises.

There is provision for division of proceeds of any condemnation for public use, and a corresponding partial abatement of rent.

In event of waste, lessor may enter and repossess the premises, notifying lessee of such violation.

Upon nonpayment or other nonperformance by lessee, lessor may declare the lease terminated and may re-enter and repossess the buildings, furniture, fixtures and equipment.

From these and similar provisions in the lease, it is readily apparent that lessor retains the fee simple title and continues an active interest and responsibility in the premises and the operations thereon during the term of the lease. The present parties, as successors to lessor, are seized as tenants in common of the fee simple title and hold the same subject to the 99-year lease with option to purchase. Their practice of dividing the rents according to the proportions of their ownership is only another aspect of their operations as active landlords; it is not a "partition" of their interests in the lease. They are, therefore, entitled to partition of the entire ownership. Section 5307.01, Revised Code.

The remaining question is whether the court shall approve the report of the majority of two of the three commissioners that, in their opinion, the estate cannot be divided without manifest injury to its value, and their evaluation or appraisement of the same.

The court will seldom fail to approve the action of the

commissioners except in case of intentional misconduct, corruption, partiality, an exceeding of their authority, gross inequality or the like. 40 American Jurisprudence 67, Partition, Section 80; *Terrell* v. *Leonard* (1910), 17 C. C. (N. S.) 89, 32 C. D. 34; 41 Ohio Jurisprudence 2d 616, 617, Partition, Section 88. There is no suggestion that this report is subject to any of these infirmities.

The record shows that the three commissioners were carefully examined in court by respective counsel. The two commissioners who signed the majority report both testified that, in their opinion, the whole tract of 43.134 acres has an "assembly valuation" greater than the total valuation of two smaller tracts if divided; and that the value of the whole tract is greater than the sum of the values of the two parts if divided. The evidence shows that these appraisers recognized the difficulties which might result to the operation of the shopping center if the land were actually divided. However, the reasons stated above justify their conclusions. The third appraiser gave his opinion that there was no difficulty in splitting the land into two parts.

The statutes do not require unanimity among the commissioners (Sections 5307.04 to 5307.09, inclusive, Revised Code); they are silent as to whether a majority may report. The briefs cite cases from other jurisdictions, in many of which, at least, there are statutory provisions.

There is an attempt to draw a distinction between the rule to be applied in a private and in a public proceeding, and it is contended that this is a private proceeding requiring unanimity. The logic of this distinction, and its force as an argument for unanimity among commissioners appointed by the court in partition, are not easily discernible.

What scant authority has been cited in Ohio inclines to the view that a majority of the commissioners may render a valid report. See *Nichols* v. *Balser* (1885), 1 C. C. 47, 1 C. D. 29; *Young* v. *Buckingham* (1832), 5 Ohio 485. This latter case, involving appropriation of land for public use, refers to "these commissioners for public objects." When referring to a requirement of unanimity, it mentions specifically only trustees, arbitrators, etc., "delegated for the purposes merely private."

The court generalizes, "The determination of this point depends upon the nature of the powers to be executed by the commissioners."

What is the nature of their powers? We believe that Judge Martin in the Court of Common Pleas gave the correct and determinative answer in this case when he said that the commissioners are performing a quasi-judicial function and that in judicial proceedings a majority can act in the absence of a statutory provision to the contrary. He stated:

"We are of the opinion that three commissioners in partition, duly appointed by a court having jurisdiction, are charged with a quasi judicial function under authority derived from the statutes of Ohio, and that if all act and deliberate together, a majority of such officers may render a finding and report in a partition proceeding that is valid and legal. Freeman on Cotenancy and Partition, 2d Edition, page 694 states:

" 'The report of the commissioners need not be unanimous. We think the true rule is, that where three or more persons are charged with a judicial or quasi-judicial function under an authority derived, not from the parties in interest merely, but from a law or statute of the state, though all must hear and deliberate together, a majority may decide.'

"See also, *Wesleyan Cemetery* v. *Woodruff*, 2 Disney Reports, 216 at page 217, where the court states:

" 'The organization of courts is but the deputation of power, confided by the government of the country, and the commission granted to those who administer the law contemplates, no unanimity in the opinions of all, but their joint award only.' "

We also find this language in 41 Ohio Jurisprudence 2d 616, Partition, Section 87:

"The commissioners appointed to make the partition must report thereon to the court. But the report of the commissioners need not be unanimous. The true rule is that where three or more persons are charged with a judicial, or quasi-judicial, function, under an authority derived, not from the parties in interest merely, but from a law or statute of the state, though all must hear and deliberate together, a majority may decide. The action of a majority of the commissioners is therefore suf-

ficient and binding upon the parties, and the report need not be signed by all.''

The duties of the commissioners may also be characterized as pre-judicial and advisory. Their report is not final, but is subject to approval or rejection by the court.

''The court may confirm the commissioners' report or return or take such other action as the nature of the case demands; and the court is not confined to a grant or refusal of confirmation but may modify the finding of the commissioners.'' 41 Ohio Jurisprudence 2d 616, Partition, Section 88.

It is our opinion that the plaintiff is entitled to partition, that the majority report of the commissioners should be approved, and that the same judgment should be entered here as in the Court of Common Pleas, and that the cause should then be remanded to that court for further proceedings.

*Judgment accordingly.*

SHERER, P. J., and KERNS, J., concur.