2011 WY 155

Ralph E. PLATT individually, and Ralph E. Platt and Ronald R. Platt Co–Trustees of the Ralph E. Platt Ranch Revocable Trust, dated the 11th day of May, 2006, Appellants (Plaintiffs),

v.

Wayne W. PLATT, individually; Wayne W. Platt as trustee of the Platt Ranch Trust dated October 10, 1991; Wayne W. Platt and Georgia Platt as trustees of the Wayne W. Platt and Georgia Platt Revocable Trust dated the 13th day of February, 2007; and Alice A. Platt, formerly Alice A. Creighton, Appellees (Defendants).

No. S–11–0049.

Supreme Court of Wyoming.

Nov. 10, 2011.

Representing Appellants: Elisa M. Butler and William L. Hiser, Brown & Hiser, LLC, Laramie, Wyoming. Argument by Mr. Hiser.

Representing Appellees: Karen Budd Falen and Brandon L. Jensen, Budd–Falen Law Offices, LLC, Cheyenne, Wyoming. Argument by Mr. Jensen.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellants Ralph E. Platt and Ronald R. Platt challenge an order from the district court modifying a partition of land made by court-appointed commissioners. Appellants contend that the district court did not have authority to modify the partition. We affirm.

*ISSUE*

[¶ 2] Appellants present the following issue:

Is a district court authorized, as a matter of law, to unilaterally—without review or approval of the commissioners—modify the partition made by commissioners appointed pursuant to Wyoming Statute § 1–32–104, rather than simply accepting or rejecting the commissioners' partition as a whole?

## FACTS

[¶ 3] Upon their father's death, Appellant Ralph E. Platt and Appellee Wayne W. Platt, together with their siblings, inherited the ranch near Encampment, Wyoming that is the subject of this dispute. As a result of subsequent transfers between the siblings, Ralph and Wayne jointly owned and operated one half of the ranch, and they eventually placed that land in the Platt Ranch Trust. Over time, disputes arose between the brothers as to the operation of the Trust and management of the property. These disputes led to the current litigation, which was initiated when Appellants filed suit against Appellees in district court, asserting a breach of trustee's duties, among other claims, and seeking a partition of the ranch. In this appeal, we are asked to address only that portion of the proceedings relating to the district court's order of partition.

[¶ 4] After finding that Appellants were entitled to part of the estate, the district court appointed three commissioners to make a partition of the property pursuant to Wyo. Stat. Ann. § 1–32–104 (LexisNexis 2009). In June of 2009, the parties submitted proposed instructions to guide the commissioners in partitioning the property. After receiving and considering objections to the proposed instructions, the district court issued Instructions to Commissioners setting forth the duties of the commissioners and the general manner in which the property was to be divided. Pursuant to Wyo. Stat. Ann. § 1–32–106 (LexisNexis 2009), the commissioners were instructed to "examine the property and set apart the same in such lots as will be most advantageous and equitable, having due regard for the improvements, situation and quality of the different parts." The instructions also permitted the commissioners to create easements for the benefit of any party.

[¶ 5] Following their inspection of the property, the commissioners submitted a report of their recommended partition. The commissioners generally divided the property into northern and southern parcels. Appellants were awarded the southern portion of the ranch, encompassing 2,213 acres, including 248 acres of irrigated lands, and valued at approximately $1,138,908.00. The lands awarded to Appellants incorporated inholdings owned separately by Ralph and Ronald Platt. Appellants were also awarded 320 acres of a BLM grazing permit. Appellees were awarded the northern portion of the ranch, encompassing 1,772 acres, including 291 acres of irrigated lands, and valued at approximately $1,138,967.00. The lands awarded to Appellees incorporated an inholding owned separately by Wayne W. Platt. In addition, Appellees were awarded 640 acres of the BLM grazing permit.

[¶ 6] The land awarded to Appellants also included a parcel known as the King Field, which was not contiguous with the bulk of their property. In conjunction with this award, the commissioners proposed to establish "Easement 3" across property set over to Appellees so that Appellants would have easier access to the King Field. Easement 3 ran along an existing road, which was described as "a little bit better than a two-track road, but not much." The King Field, however, could also be reached by means of a road providing access from the east side of the parcel, and by a county road providing access from the west. Nonetheless, the commissioners initially determined that Easement 3 was appropriate because it provided a much shorter route for access to the King Field than the county road. The commissioners also proposed to establish "Easement 2" for the benefit of Appellants, which crossed the corner of a parcel awarded to Appellees.

[¶ 7] Following the submission of the commissioners' report, both parties objected to the creation of Easement 3. Appellants objected on the grounds that the easement crossed property owned by the Harriet Platt Revocable Trust, which was not owned in common and was not subject to the partition. Appellants noted that "This creates title issues and access issues relative to Easement Access 3." Appellees, on the other hand, objected on the grounds that the easement was "largely unnecessary and impracticable" to Appellants' access and use of the property. They also claimed that "the use, maintenance, or improvement of the easement will

substantially interfere with the [Appellees'] headgates and water rights."

[¶ 8] The district court held a two-day hearing to consider the parties' objections to the partition. At the hearing, the commissioners acknowledged the likelihood of future disputes relating to the construction and maintenance of Easement 3. One of the commissioners stated "[T]hat is something we overlooked. We thought we were solving the problem by allowing access to go through there, but it has probably created a lot of problems on who is going to build it, who is going to maintain it, and who is going to— and that probably needs to be worked out, certainly, as part of it."[1] In light of the possibility that Easement 3 would give rise to further disputes between the parties, Appellants' counsel questioned the commissioner about a potential solution advocated by Appellants, which was to grant Easement 3 to Appellees, and set the 13.15 acres subject to the Easement over to Appellants:

Q: ... Do you believe that a modification of your report that provided to set over the 13.15 acres to the Platt—to Ralph Platt and the plaintiffs provided that there is also an easement to Alice Platt for irrigation purposes, do you think that that would be a reasonable way to resolve those issues and future problems?

A: I do. I think it would take care of a lot of those things. We kind of created a problem there. I realize that there has to be access to the water, and I realize that there's got to be access to the property, too, and it's some kind of an exchange. I guess, as a commissioner, it would have really helped us if we could have come up with a proposal. And I know the Court has got its way of working, but if we could have come up with a proposal, talked with the plaintiffs and defendants and then said, What is wrong with this and what is right with it, and readjusted it, we wouldn't have done it the way we did. And the other two commissioners on the phone last night agreed with that. We would have done some things different.

Q: And so you think that is one fair way to do it would be to set the 13.15 acres over to the plaintiffs and provide an easement for irrigation purposes back to Alice Platt?

A: That would be one solution.

The other two commissioners, however, did not express an opinion on the solution proposed by Appellants, and no subsequent report was prepared by the commissioners.

[¶ 9] Considering the problems associated with the creation of Easement 3, counsel for Appellants repeatedly urged the court to make the suggested modification to the commissioners' report. During opening statements, Appellants' counsel stated that "what we are going to be proposing is that the Court make a modification to the proposed division by the commissioners that will include approximately 13.15 acres of property to be slivered off near the Easement 3, which would then put Easement 3 on property owned by the plaintiff so that the issues concerning the road would not be something that would be contentious between the parties." Counsel for Appellants also stated that "We will be asking the Court to make a decision that gratifies most of the commissioners' return with making one slight small deviation, possibly two deviations—one of them may not be very contested—and then enter that order directing that property be divided between the plaintiff and the defendant." As indicated by this statement, Appellants also requested "one small other revision" concerning Easement 2. Appellants'

---

1. Two of the commissioners also testified that the creation of Easement 2 was problematic. Due to the fact that the easement would require construction of multiple gates or cattle guards, one commissioner stated that

> I think what we did was—it was not very efficient. If I had to do it again, I think I would say let's divide it so that one property owner is on one side of the road and one is on the other. And that would give—it also would create a snow hazard wherever you put in a gate or cattle guard or whatever on that road,

too. So it wasn't very efficient use, I don't think, on our part in looking back at it.

Another commissioner stated that

> It would sure make sense to put a fence on the west side of [the corner crossing] and not have two cattle guards and stuff as far as the 2 acres or whatever that was. I suppose the ownership of that ought to change, too, just so there's no problems [sic] somewhere down the road. But as far as not having two cattle guards, that would make a lot of sense.

counsel concluded his opening remarks by asking the court to "confirm [the commissioners'] report with the modification of fixing the dilemma concerning the Easement 3 location."

[¶ 10] Counsel for Appellants again requested that the court modify the commissioners' report during closing arguments. Appellants' counsel stated that "We are here asking the Court to make an adjustment. And you heard from the commissioners how they feel about it. We are asking the Court to make an adjustment in their determination that would allow that 13.15 acres where that easement is to be controlled by the plaintiffs with the rights of the defendant and make sure that her rights were met with her ability to object if they wanted to." Further, Appellants' counsel stated that "The defendants want to come in and rip the guts out of that division that was made by the commissioners. We are asking for the Court to prevent that from happening, to uphold the commissioners' report, to confirm the division made by the commissioners with the reasonable modification that the commissioners said, in light of the controversy. Inserting this area is a reasonable modification to award the 13.15 acres to the plaintiff. We would ask the Court to do that and confirm the report and order that an order be prepared to carry that out."

[¶ 11] The district court issued its decision letter on May 5, 2010. With two exceptions, the district court affirmed the partition of the estate as recommended by the commissioners. First, the district court vacated Easement 3. The district court determined that vacating the easement was appropriate because improving the access route on Easement 3 would require a substantial amount of improvement and maintenance, including road "widening, drainage, foundation work, and surfacing." The court also determined that this work would interfere with the headgates and irrigation ditches on property owned by Appellees, which would likely result in future litigation. Further, the court noted the existence of two other access routes to King Field, which provide access from the east and west sides of the property. Second, the district court vacated Easement

2 and instead granted approximately 2.07 acres to Appellants, without encumbrance, in order to eliminate the need for multiple gates and cattle guards. The court determined that the extra value to Appellants would provide some compensation for the loss of Easement 3.

[¶ 12] Appellants subsequently filed a Motion to Alter or Amend Judgment and/or Motion for New Partition, arguing that the district court did not have the authority to modify the partition recommended by the commissioners. The court denied the motion, noting that "At trial, both sides proceeded upon the assumption that the court could modify the recommendations of the commissioners. Plaintiffs do not object to a modification that was made in their favor. Thus, plaintiffs are attempting to have it both ways and to argue an issue that was not raised at trial." The court determined that "Given that the issue is not addressed by the statutes, the better policy is to allow the court to modify the recommendations, particularly in a case where the commissioners made a mistake, the modification affected only one easement which is at issue, and both sides requested modifications."

[¶ 13] Appellants timely filed this appeal.

### STANDARD OF REVIEW

[¶ 14] Whether a district court has discretion to modify a partition under Wyo. Stat. Ann. § 1–32–101, *et seq.* is a question of law, which we review *de novo*. *Smith v. Lewis Auto Body*, 2011 WY 109, ¶ 8, 255 P.3d 935, 937 (Wyo.2011).

### DISCUSSION

[¶ 15] Appellants argue that Wyoming's partition statutes do not permit the district court to modify a partition made by court-appointed commissioners. They contend that the district court's action was "a clear usurpation of the statutory authority conferred upon the commissioners to make a partition of the property," and direct our attention to Wyo. Stat. Ann. §§ 1–32–104 and 1–32–106. Those statutes, and the portions emphasized by Appellants, provide as follows:

**§ 1–32–104. Finding of court; order for partition; appointment of commissioners; ordering writ of execution to issue.**

If the court finds that the plaintiff has a legal right to any part of the estate, it shall order partition in favor of the plaintiff or all parties in interest, *appoint three (3) disinterested persons of the vicinity to be commissioners to make the partition* and order a writ of execution to issue.

**§ 1–32–106. View and examination of estate by commissioners; setting aside under oath.**

*In making the partition, the commissioners* must examine the estate and set apart the same in such lots as will be most advantageous and equitable, having due regard to the improvements, situation and quality of the different parts.

(Emphasis added.) Appellants assert that these statutes "fail to provide any means or confer any kind of authority upon a district court to make the partition," and mandate that "the partition is to be made solely by the commissioners."

[¶ 16] Appellees argue, however, that the partition statutes grant the district court ultimate authority to order partition of the property. They point to language from Wyo. Stat. Ann. §§ 1–32–105 and 1–32–109. Those statutes, and the portions emphasized by Appellees, provide as follows:

**§ 1–32–105. Writ of partition directed to sheriff; contents; administering oath to commissioners.**

The writ of partition may be directed to the sheriff of any county in which any part of the estate lies, and shall command him to administer the oaths of the commissioners, and setoff and divide to the plaintiff or each party in interest such part and proportion of the estate *as the court shall order.*

**§ 1–32–109. Appraisement required where estate cannot be divided according to writ; return by commissioners; election to take at appraised value.**

When the commissioners are of the opinion that the estate cannot be divided according to the demand of the writ without manifest injury to its value, they shall re-turn that fact to the court with a just valuation of the estate. *If the court approves the return* and one (1) or more of the parties elects to take the estate at such appraised value, it shall be adjudged to him upon his paying to the other parties their proportion of the appraised value according to their respective rights, or securing the same as hereinafter provided.

(LexisNexis 2009) (emphasis added). Based on the language of these statutes, Appellees contend that, "While the commissioners are delegated the authority to recommend a partition of lands to the district court, in accordance with § 1–32–106, the commissioners' powers to evaluate the property and recommend physical partition always remain subject to the ultimate approval of the district court."

[¶ 17] We have not previously had an occasion to determine whether Wyo. Stat. Ann. § 1–32–104, *et seq.* confer authority upon a district court to modify a partition made by court-appointed commissioners. In *Field v. Leiter*, 16 Wyo. 1, 90 P. 378, 390 (1907), which constitutes this Court's most extensive examination of the law relating to partition, we stated that "The court does not make the partition, it only acts to approve or disapprove where partition is reported." However, the issue of whether a court has the power to modify a partition was not raised or addressed in that case. Rather, the pertinent issue was whether the commissioners' report must include facts concerning the character and situation of the land subject to partition or a specific statement that the partition was equitable and advantageous. *Id.* at 389–90. The Court held that such statements were not required to be included in the report. *Id.*

[¶ 18] Nonetheless, we are aided in our resolution of the issue in the present case by the discussion in *Field v. Leiter* of the general nature of the remedy of partition. The Court, describing the historic development of partition actions, explained as follows:

In this country the remedy of partition has generally been regulated more or less by statute, and the jurisdiction under statute has been in some states vested in courts of law, and in others in courts of

equity, and in still others the remedy may be pursued in either a court of law or equity; *and, generally, the statutory creation or regulation of the remedy has not been considered as excluding equity jurisdiction over partition in proper cases.* *Id.* at 386 (emphasis added). Although the Court noted that the distinction between actions at law and suits in equity had been abolished in Wyoming, the Court held that invocation of equitable principles would depend on the nature of the particular action:

> The partition statute forms a part of the civil code which declares that there shall be but one form of action to be called a civil action, and abolishes the distinctions between actions at law and suits in equity, and the forms of all such actions and suits previously existing. (Rev. Stat. 1899, Sec. 3443.) An action to compel partition is therefore, we think, a civil action, and it is so held in Ohio, from which state our code was taken. (*Perry v. Richardson,* 27 Ohio St. 110 [ (1875) ]; *McRoberts v. Lockwood,* 49 Ohio St. 374, 34 N.E. 734 [ (1892) ].) **But it does not necessarily follow that it is purely equitable in character. It may be or it may not, depending upon the nature of the titles asserted and the relief sought.** The distinction between actions at law and suits in equity are abolished by the code, but not the distinction between legal and equitable rights or legal and equitable relief. As Mr. Phillips says: "These provisions have neither abolished nor affected legal or equitable rights and

reliefs; the object has been to avoid circuity of action and multiplicity of suits, and to simplify, facilitate, and cheapen procedure. Legal and equitable rights and defenses remain as before; the modes of asserting them are changed." (Phillips Code Pl., 163.)

*Id.* at 387 (emphasis added). From this discussion, it is apparent that the rules of equity have generally continued to supplement statutory procedures established in other jurisdictions, and *Field v. Leiter* stands for the proposition that this is true in Wyoming as well. *See also Brogoitti v. Brown,* 231 Or. 309, 372 P.2d 773, 776 (1962) ("The prevalence and detailed provisions of [partition] statutes might well have caused them to be regarded as constituting a complete and self-contained system, wholly supplanting the equity jurisdiction as to partition. This view has not prevailed." (quoting Restatement of Property, p. 654)). Considering that we have previously held that equitable principles continue to provide a viable source of relief in partition actions, we are mindful of the rule that "in equity, the court may alter or amend the [commissioners'] report in a proper case to comply with or obviate objections." 68 C.J.S. *Partition* § 153 (2011).

[¶ 19] Further, in light of the fact that Wyoming's partition statutes were modeled after Ohio's code, as noted in *Field v. Leiter,* we find authority from Ohio to be particularly helpful to our determination of whether a district court can modify a partition.[2] In

---

2. Wyo. Stat. Ann. §§ 1–32–104 through 1–32–106 are phrased in a substantially similar manner as their current Ohio counterparts. Ohio Rev.Code Ann. §§ 5307.04 through 5307.06 provide as follows:

**§ 5307.04. Order of partition; additional commissioners; estates in other counties**

If the court of common pleas finds that the plaintiff in an action for partition has a legal right to any part of the estate, it shall order partition of the estate in favor of the plaintiff or all interested parties, appoint one suitable disinterested person to be the commissioner to make the partition, and issue a writ of partition. The court on its own motion may, and upon motion of a party or any other interested person shall, appoint one or two additional suitable persons to be commissioners. If the estate to be partitioned extends beyond the county in which the action is commenced, the

court may appoint a separate commissioner or commissioners, not to exceed three, to make the partition of that portion of the estate located in the other county.

**§ 5307.05. Writ of partition**

A writ of partition issued under section 5307.04 of the Revised Code may be directed to the sheriff of any of the counties in which any part of the estate lies and shall command the sheriff that, by the oaths of the commissioner or commissioners, the sheriff shall cause to be set off and divided to the plaintiff or each interested party, whatever part and proportion of the estate as the court of common pleas orders.

. . .

**§ 5307.06. Duty of commissioners in making partition**

In making a partition, the commissioner or commissioners shall view and examine the estate and, on their oaths and having due regard

*McCarthy v. Lippitt,* 150 Ohio App.3d 367, 374, 781 N.E.2d 1023, 1027–28 (2002), the issue presented was whether the trial court violated the partition statutes by ordering the appointed commissioners to conduct an appraisal of property before making a determination that the property could not be physically partitioned. The appellants argued that the trial court's order prevented the commissioners from recommending a partition of the property and, in doing so, usurped the role of the commissioners. *Id.,* 781 N.E.2d at 1028. The court held, however, that the trial court had not erred by ordering the commissioners to submit an appraisal. *Id.,* 781 N.E.2d at 1030.[3] In discussing the general rules relating to partition actions, the court first noted that partition is essentially an equitable remedy.

"Although the right to partition is controlled by statute, it has long been held to be essentially equitable in nature." *Bryan v. Looker* (1994), 94 Ohio App.3d 228, 231, 640 N.E.2d 590, citing *Russell v. Russell* (1940), 137 Ohio St. 153, 157, 17 O.O. 506, 28 N.E.2d 551. "Where the rights of the parties are not clearly defined in law, broad equitable principles of fairness apply and will determine the outcome of each case individually." *In re Estate of Cogan* (1997), 123 Ohio App.3d 186, 188, 703 N.E.2d 858.

*Id.,* 781 N.E.2d at 1027–28. The court went on to explain that, under the Ohio statutes, judges must be ultimately responsible for exercising the power of partition.

First, it was ultimately the decision of the trial court to order physical partition or a judicial sale of the property, regardless of the opinion of the commissioners. R.C. § 5307.05 states, in pertinent part: "the sheriff shall cause to be set off and divided to the plaintiff or each interested party, whatever part and proportion of the estate *as the court of common pleas orders.*"

(Emphasis added.) The commissioners' powers to evaluate the property and recommend physical partition always remain subject to the ultimate approval of the court of common pleas:

"The partition power of commissioners has been characterized as 'quasi-judicial.' *Forest Park Properties, Inc. v. Pine* (1966), 9 Ohio App.2d 348, 355, 38 Ohio Op.2d 427, 431, 224 N.E.2d 763, 768. Commissioners have 'very large powers' in making partition. *Terrell v. Leonard* (1910), [32 Ohio Cir. Dec. 34], 17 [Ohio] C.C. (N.S.) 89, 92. However ... commissioners' powers are ultimately subject to court authority; commissioner partition reports may be rejected, modified, or approved by the trial court. An order partitioning property extinguishes a tenant's rights in the whole property, and establishes the tenant's exclusive right of ownership in the part of the property set off to him. Since it is an order creating and extinguishing rights in specific property, it is an exercise of the judicial power, and cannot be entirely delegated to a nonjudicial officer. A judge must remain ultimately responsible for the exercise of the power of partition." *McGill v. Roush* (1993), 87 Ohio App.3d 66, 76, 621 N.E.2d 865[, 871] (footnotes omitted); see also *Forest Park Properties, Inc. v. Pine* (1966), 9 Ohio App.2d 348, 356, 38 Ohio Op.2d 427, 224 N.E.2d 763[, 769] (partition commissioners role is pre-judicial and advisory only.).

*Id.,* 781 N.E.2d at 1029. In addition to Ohio, courts in other jurisdictions lacking statutory provisions expressly authorizing modification of a partition have also determined that a court can modify a partition made by court-appointed commissioners. *See, e.g., Morris v. Daniel,* 183 Ky. 780, 784, 210 S.W. 668, 670 (1919) ("A report of commissioners filed in a

---

to the improvements, situation, and quality of the different parts, set it apart in lots that will be most advantageous and equitable.

...

**3.** The trial court's order was reviewed for an abuse of discretion. *Id.,* 781 N.E.2d at 1028. We note that decisions from other jurisdictions also indicate that partition orders are subject to an

abuse of discretion standard of review. *See, e.g., Carr v. Harden,* 34 Wash.App. 292, 296, 660 P.2d 1139, 1141 (1983) (noting that "The report is for the use of the court to aid in the exercise of its discretion."); *Englehart v. Larson,* 1997 SD 84, ¶ 12, 566 N.W.2d 152, 155 (1997) (noting that partition is an equitable proceeding, and that equitable actions are reviewed for an abuse of discretion).

suit is only the recommendation or suggestion of the commissioner which the court may or may not accept and confirm. Often the report is wholly rejected or disregarded; sometimes only partly adopted."); *MacDonald v. Bernal*, 34 Cal.App. 431, 432, 167 P. 902, 903 (1917) ("[T]he report of the referee in an action for partition is merely advisory to the court, which is not bound to adopt the basis used by the referee for his calculation as to the values of the property involved, but may in its final decree make its own findings with respect to such matters.").

██ [¶ 20] Although *McCarthy* and the other Ohio cases cited in that opinion, like *Field v. Leiter*, did not involve an actual modification of the commissioners' report, we are persuaded by the reasoning set forth in these cases. In providing that "The writ of partition ... shall ... setoff and divide to the plaintiff or each party in interest such part and proportion of the estate *as the court shall order*," Wyo. Stat. Ann. § 1–32–105 indicates that a partition is subject to the ultimate approval of the district court, despite the fact that the commissioners have the initial responsibility to "make the partition." Indeed, Appellants concede that the district court has the ability to reject a partition made by commissioners. However, they fail to explain any functional distinction between the power to reject a partition and the power to modify a partition. If the court has the ability to reject the commissioners' report, then the court is already empowered to shape the partition, provided that the court's judgment is a sound exercise of discretion. But certainly the district court's ability to modify a partition better serves the objective of the partition statutes, which is "to simplify, facilitate, and cheapen procedure." *Field v. Leiter*, 90 P. at 387. Accordingly, we find that the district court had authority to modify the commissioners' partition in order to obviate the parties' objections to the report. Further, under the circumstances of this case, where both parties requested modifications concerning Easement 3, and where the commissioners acknowledged that the decision to create Easement 3 had "probably created a lot of problems," we find no abuse of discretion in the district court's amendment to the partition.

[¶ 21] Finally, we note that, at the hearing on the parties' objections to the partition, Appellants repeatedly asked the district court to modify the commissioners' report. Appellants opened the hearing with a request that the Court "make a modification to the proposed division ..." and concluded their arguments with a plea that the Court "uphold the commissioners' report, to confirm the division made by the commissioners with the reasonable modification that the commissioners said, in light of the controversy." In light of Appellants' arguments below, we would be justified in concluding that Appellants complain of an error which they "induced or provoked the court" to commit. *TF v. Dep't of Family Servs. (In re CF)*, 2005 WY 118, ¶ 27, 120 P.3d 992, 1002 (Wyo.2005). As we have previously stated, the doctrine of invited error dictates that "If a party requests or moves the court to make a ruling which is actually erroneous and the court does so, that party cannot take advantage of the error on appeal or review." *Robbins v. Robbins*, 2002 WY 80, ¶ 10, 46 P.3d 880, 883 (Wyo.2002).

[¶ 22] Affirmed.