DAVIS, Justice.
[T1] This is an action for partition of a ranch. Appellant Alice A. Platt challenges a district court order which requires the construction of a new ditch to carry the water she received to her parcel of land. We find that the orders entered by the district court are not sufficiently complete to establish that *434 a partition in kind can be made without manifest injury to the value of the property, and that the district court's order is clearly erroneous because it is not supported by competent evidence that an essential easement and permission for a change in means of conveyance can be obtained. We therefore reverse and remand for further proceedings consistent with this opinion.
ISSUES
[T2] We restate the issues presented as follows:
1. Is Appellant barred by res judicata, based upon the first order entered by the district court, from challenging the location and provisions related to location of the ditch selected by the district court?
2. Are the two orders, read together, sufficiently complete to resolve the issues necessary to partition the property as has been done?
8. Can a partition action require a party to acquire an easement over lands owned by a third party not involved in the action, and if so, was the district court's requirement that they do so clearly erroneous because it was not supported by adequate evidence?
4. Can a court order a party to a partition action to obtain a change in means of conveyance of water from the Board of Control?
5. Was the district court's selection of what is known as the Westerly Ditch to carry Appellant's water clearly erroneous?
6. Did the district court err in denying Appellant's request for a stay?
FACTS
[T3] This partition action returns to the Court for resolution of issues relating to the location of a ditch easement. As will be discussed below, the property involved is a family-owned ranch that was inherited by two brothers, Wayne and Ralph Platt.[1] They have since conveyed their interests to the parties in this appeal.
Proceedings Before the First Appeal
[T4] As we indicated in our previous decision, disagreements as to the operation of the family ranch located near Encampment, Wyoming led to this action. Platt v. Platt, 2011 WY 155, ¶ 3, 264 P.3d 804, 805 (Wyo.2011) (Platt 1 ). The district court found that the parties were entitled to partition, appointed commissioners as required by statute, and gave them comprehensive instructions as to their duties. Id., ¶¶ 3-4, 264 P.3d at 805. See Wyo. Stat. Ann. § 1-32-104 (LexisNexis 2011).[2]
[¶ 5] The commissioners submitted their report in due course. They proposed a division of the land which will be generally described below, and they recommended that water rights be allocated to the parcel of land to which they were appurtenant.[3] As will be seen, this required that the water appurtenant to the northern parcel awarded to Alice Platt be separated from that appurtenant to the southern parcel awarded to the Trust.[4] The commissioners recommended the establishment of a "Dedicated Ditch" to carry Alice's water to her property. This would require an additional headgate and measuring device to separate the parties' water after it was diverted from the King Turnbull Ditch No. 2, which is not on the partitioned property.
[T6] The commissioners recommended leaving it up to the parties to locate the Dedicated Ditch, and they gave only a general description of the area in which they believed it should be located.
The Commissioners recommend the installation of a measuring device in the King Turnbull Ditch at the approximate *435 location where the King Turnbull Ditch crosses the east line of the NE4 NW4 of Section 38, Township 14 North, Range 82 West, for the purposes of measuring all of the water in the King Turnbull Ditch. The Commissioners make a further recommendation that a second measuring device be installed at the point of beginning of what will be a new dedicated "Delivery System" for the purposes of delivering water to the lands awarded to the Defendants.
The Dedicated Ditch would establish a headgate and measuring device located at approximately the SE corner of the SW4 of Section 28, Township 14 North, Range 82 West. It would then run in a northwesterly direction approximately three-quarters of a mile across lands awarded to Plaintiffs at such location as the parties may jointly agree to the approximately NW corner of the SE% NWA of Section 28, Township 14 North, Range 82 West, for the benefit of those lands awarded to Defendants. The location of the Dedicated Ditch to be specifically described and to be a permanent easement across those lands on which it is located.
However, in the event the parties are unable to agree on the exact location of the Dedicated Ditch, to serve those lands awarded to Defendants by September 1, 2010, then Commissioners would ask the Court for authority to employ an engineer and to return to the lands with the engineer for the purposes of determining the exact location for such Dedicated Ditch. In making this recommendation, the Commissioners would point out to the Court that because the lands involved are currently covered with snow, it is impossible for them to make a recommendation for the exact location of such ditch at the present time.
(Emphasis added). The commissioners also recommended using the existing ditch system in 2010, contemplating that the Dedicated Ditch would be built in time for use in the Spring of 2011.
[T7] The district court incorporated these recommendations in its July 1, 2010 order partitioning the property, which basically left the parties to work out a location for the Dedicated Ditch because the commissioners were not able to locate it due to snow cover. The ruling required them to use an existing ditch network to irrigate both parcels until the Dedicated Ditch could be built.
[¶ 8] The Trust (during this introduction, we will refer to Appellees collectively as the Trust and to Appellant here as Alice because their positions changed between the two appeals) appealed one aspect of the district court's decision, contending that its decision to set aside over 18.15 acres of their property to the ditch and grant an easement to Alice was improper. It argued that the district court lacked authority to modify a partition by court-appointed commissioners. Platt I, ¶ 15, 264 P.3d at 807. While, as discussed below, the order was not truly final, we considered the merits of the narrow issue presented and affirmed.[5] Id., ¶ 22, 264 P.3d at 811.
The Second Proceeding to Locate the Dedicated Ditch
[¶ 9] As might have been anticipated, the parties were unable to agree on a location for the Dedicated Ditch The Trust therefore moved to compel Alice to comply with the judgment and agree on the location of the ditch, or for reengagement of the commissioners to locate it. The court reappointed the same three commissioners, who then set out to locate the Dedicated Ditch to convey Alice's water.
[¶ 10]It is necessary at this point to touch on the history of the land involved here to understand the difficult issues the district court had to resolve. Isaac Platt homesteaded a portion of the partitioned property in 1886. Other portions of the property were originally owned by other homesteaders. These homesteaders filed for water rights and built ditches on their properties.
[¶ 11] Over time, Ralph H. Platt bought up these properties, which now make up the *436 partitioned ranch. As most Wyoming citizens already know, the business of ranching requires good pastures and leases on which cattle can graze, but it is also important to have hay meadows. A rancher can harvest the hay and feed it to his cattle when grass is in short supply and in the winter, and in a good year may even have enough hay to sell some of it.
[¶ 12] This property includes three "fields" or hay meadows: the Home Field, the Pool Field, and the King Field. Before 1949, these were flood-irrigated by a number of different ditches. In 1949, Ralph E. Platt completed what is called the "Pool Enlargement," which allowed him to "bunch" or pool water drawn from the King Turnbull No. 2 ditch on the neighboring Kraft ranch.[6] The water was then sent down a ridge in a ditch the parties call either the Historic Ditch or the North-South Ditch (we will call it the latter). The ranch was able to divert water into ditches branching off the North-South ditch, flood irrigate the King Field (now awarded to the Trust), and then recapture any water left over and flood-irrigate the Home Field where it could be reused on the parcel awarded to Alice.
[¶ 18] As already noted, this method could not continue after the property was partitioned, because the parties now own separate water rights, and some way had to be found to meter and keep Alice's water separate from that of the Trust. Alice received a superior territorial water right.
[T14] The commissioners plotted a location for what the record refers to as the Commissioners' Ditch. As in their original recommendation, water allocated to the parties would be removed from the King Turn-bull No. 2 Ditch at the existing headgate on the Kraft Ranch. Alice's share would then be separated by another headgate and brought down a new ditch which had to be constructed in the general location of the North-South Ditch. The district court found the negative aspects of this choice to be as follows:
& The ditch would be approximately 7,475 feet long and would require ditch mitigation measures down virtually its entire length as it traverses the center of the land partitioned to the Trust.
® It would require approximately nineteen crossings for machinery, equipment, and cattle, eight crossover pipes and eight related headwalls to carry water without commingling it, as well as eighteen wood boxes for drops to prevent water from eroding the ditch when it rapidly loses elevation.
eA number of trees would have to be removed.
® It would take up about seven acres of the Trust's primary irrigated hay meadow.
@The ditch would be visible from Ron Platt's home. Mr. Platt operates the ranch for the Trust.
@The parties would have to work with machinery in close proximity to maintain their respective ditch networks. They have not been able to get along.
In addition, the Commissioners' Ditch would require an easement across lands owned by the Kraft Ranches due to the topography of the area.
[T15] Alice proposed that the court simply locate the ditch in the same area as the North-South Ditch. The court found as follows concerning that option:
@ This would be the longest ditch of the three proposed, and it would require ditch mitigation measures for its entire length. The ditch is so wide and deep that more than a thirty-foot easement would be required to place another ditch in that area, and the trust would lose more than seven acres of its primary hay meadow.
® It would require more crossings, crossover pipes, headwalls, and wood box drops than the Commissioners' Ditch.
would be visible from Ron Platt's home.
e Its location would make it difficult if not impossible for the Trust to use water it *437 receives from another source, Little Beaver Creek.
[¶ 16] We note that this location would also require the parties to work with machinery in close proximity to each other in order to maintain or repair their respective ditches. All water to both ditches might have to be shut off if the Dedicated Ditch "blew out." On a positive note, this alternative would not require an easement to be obtained from a neighboring property owner, nor, evidently, permission to change the means of conveyance from the Board of Control. Alice also points out that the North-South Ditch is a known commodity, because it has been used since approximately 1949.
[¶ 17] At the hearing, the Trust proposed a third option to the west of the other ditches, which is therefore referred to as the Westerly Ditch The proposed route was simply drawn on a map by Ron Platt, and it has not therefore been surveyed. The district court found as follows concerning the Westerly Ditech:
e It is the shortest ditch of the three at 5,870 feet.
e Because it is located to the west of the Trust's irrigated lands, it will require ditch mitigation measures on only one side.
e It will require at most three crossings for machinery and two crossover pipes, although it will require eight drop pipes in three locations, three concrete diffusers (to mitigate the effects of falling water), and three headwalls at the drop pipe locations.
® No trees will need to be removed.
@The route is in the general area described in the order of partition de-seribed above.
eIt will not be visible from Ron Platt's home.
e The ditch can be checked from a county road adjacent to the Trust's parcel.
e It will result in the loss of only 8.8 acres of the Trust's irrigated pasture, as opposed to approximately seven acres of irrigated hay meadow.
[¶ 18] On the negative side, no ditch exists in this area, although there is a remnant of a ditch that has not been used since the 1950s. The general area is therefore untested and may contain porous soils, meaning that water may have to be carried in a pipe or a lined ditch for at least a portion of its length to reduce conveyance losses. It is a steep route, and hence the drop structures are required to avoid having the force of falling water destroy the ditch.[7]
[¶ 19] On the other hand, all of the commissioners, who are ranchers who irrigate themselves, conceded that the Westerly Ditch could work, although measures to deal with the elevation loss and other factors will be needed, and there will be costs associated with these measures. As with the Commissioners' Ditch, an easement would have to be obtained from the Kraft Ranch to the south of the Trust property, and the Board of Control would have to approve a change in the means of conveyance of the water. As of the date of argument, neither of those things had occurred.
[¶ 20] A hearing related to all of the above took place on June 19 and 20, 2018. The parties submitted proposed findings of fact and conclusions of law. In a decision letter filed August 26, 2013, the district court chose the Westerly Ditch, although it noted that this was arguably the most expensive option. It commented as follows:
The Court is in a difficult position. While the decision should be fair and equitable, as well as cost effectivel,] the Court has to take into consideration the Parties' inability to cooperate in this matter. Therefore, the Court will adopt Mr. Platt's proposal because it has the best future outcome for both parties, being that there would be minimal to no interaction between them for maintenance and inspection. The Court recognizes the expense that both parties will have to incur to achieve this result, however all the propos *438 als required some amount of construction and cost.
[T21] The district court entered the findings of fact and conclusions of law proposed by the Trust on August 26, 2018. It ordered the parties to share the cost of installing a headgate to split their water, as well as the cost of building and constructing a workable irrigation system and addressing any problems encountered with the Dedicated (Westerly) Ditch for a period of three years from Alice's first use of the ditch. The orders are contradictory as to which party must pay the costs of correcting any problems and maintenance after that time period.[8] The parties were required to pay their portion of the costs within thirty days of receiving a statement for them, and if a party did not pay, the other person or entity could recover attorney fees and interest at ten percent. It also required that the work be completed "prior to the 2014 irrigation season," but did not define that term.
[¶ 22] Importantly, the Westerly Ditch can only become a reality if an easement can be obtained to convey water across Kraft Ranches, Inc's land. Appellee informs us that one of the appraisers, Jerry Kraft, is a shareholder in and president of Kraft Ranches, Inc., although this is not reflected in the record. The commissioners' report, which was signed by Mr. Kraft, indicated as follows:
Kraft Ranches, Inc., owner of the property where the measuring devices and headgate are to be located, will allow easement for Dedicated Ditch, access to and from the location, dirt materials necessary for installation and maintenance of same at no cost. Costs associated with any paper work or surveying work deemed necessary to accomplish this shall be shared by the parties of the partition. Owners of Kraft Ranches, Inc. need to be notified of any upcoming work and reserve the right to advise and oversee any construction or maintenance on their property.
[¶ 28] The district court evidently believed this language sufficient to assure that a workable easement could be obtained, although it does not demonstrate that the Kraft Ranches corporation had approved the gift, the location or the size of the proposed easement, or exactly what rights it retained to "advise and oversee." The court ordered Alice to work with Kraft Ranches to obtain and locate an easement across its land, and directed the parties to share the cost of establishing and building the ditch on that property. The order was then appealed.
Petition for Stay
[¶ 24] Appellant petitioned for a stay on November 18, 2018. She claimed that the order entered on August 26, 2013 would effectively prohibit her from appealing from it because she would have to expend the funds needed to pursue an appeal to build the ditch. She filed an affidavit attesting that she obtained estimates to survey and engineer the ditch, as well as the cost of pipeline materials and bids for construction. The attached estimates ran from $115,000 to $180,000.[9] Affidavits from the two contractors who provided bids were also attached. She also filed a copy of a proposal by the United States Department of Agriculture *439 Natural Resources Conservation Service (NRCS), to whom Alice and Ron Platt had evidently applied for a grant and assistance in designing a means to convey Alice's water. NRCS estimated the cost of installing a twelve- or fifteen-inch pipeline at $80,773 and $96,878, of which the parties would pay thirty-five percent. For reasons that are not clear in the record, the proposal did not come to fruition.[10] Appellant also pointed out that the location of the ditch might change after appeal, and that it would be fruitless to expend as much money as would be required in light of that possibility.
[¶ 25] The district court denied the application for a stay without hearing on January 24, 2014, finding only that it was "inappropriate." Appellant timely appealed that order. She did not build the ditch, and was no longer able to use the North-South Ditch to convey water to her land. She applied to this Court for a stay on February 12, 2014, and the Court denied the application on March 4, 2014. The appeals were consolidated.
DISCUSSION
Res Judicata as to Location of Ditch
[¶ 26] Before addressing the merits, we must resolve a threshold question raised by Appellee Trust. It claims that the first order, which described itself as "Final," resolved the location of the Dedicated Ditch, and that because that aspect of the order was not challenged in Platt I, it cannot be challenged on appeal now. For more than one reason, we disagree.
[¶ 27] Determination of whether the doctrine of res judicata (or claim preclusion) applies is a question of law, which we review de novo. Goodman v. Voss, 2011 WY 33, ¶ 23, 248 P.3d 1120, 1126 (Wyo.2011) (citing Erwin v. State Dept of Family Servs., 2010 WY 117, ¶ 10, 237 P.3d 409, 412-13 (Wyo.2010)). The elements of res judicata are: (1) identity in parties; (2) identity in subject matter; (8) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them. Rathbun v. State, 2011 WY 116, ¶ 9, 257 P.3d 29, 33 (Wyo.2011) (citing Eklund v. PRI Envtl., Inc., 2001 WY 55, ¶ 15, 25 P.3d 511, 517 (Wyo.2001)). In addition, in order for res judicata or collateral estoppel to apply, the proceeding in question must have terminated with a final or appealable order. In re E.R.C.K., 2013 WY 160, ¶ 28, 314 P.3d 1170, 1176 (Wyo.2013); Aragon v. Aragon, 2005 WY 5, ¶ 12, 104 P.3d 756, 760 (Wyo.2005) (decree which did not determine custody did not collaterally estop father seeking custody); In re KRA, 2004 WY 18, ¶ 10, 85 P.3d 432, 436 (Wyo.2004). As a leading federal treatise explains:
Judicial actions must achieve a basic minimum quality to become eligible for res judicata effects. First, there must be a judgment. The traditional words used to describe this quality require that there be a judgment that is valid, final, and on the merits. It seems safe to guess that most res judicata questions are raised by judgments that easily satisfy these requirements. Difficulties remain, however, with respect to each requirement.
[[Image here]]
The requirement that a prior judgment be "final" employs a word that immediately invokes the relationships between rules of appealability and res judicata. Tentative or incomplete action, avowedly subject to further consideration, does not alone suffice for appeal or res judicata.
18A Charles Alan Wright et al., Federal Practice and Procedure § 4427 (2d ed. updated 2014) (emphasis added) (footnotes omitted).
[¶ 28] By this standard, it is apparent that the first "final" order did not bar consideration of the location of the easement for the Dedicated Ditch, for the following reasons:
e The commissioners made it clear in their report that they could not locate the ditch because the land was covered with *440 snow. They testified at the second trial that they had no specific location in mind, and intended for the parties to agree on a location for the ditch.
® Easements which are not specifically de-seribed are null and void and of no force or effect unless they can somehow be located. Wyo. Stat. Ann. § 34-1-141(a), (c) (LexisNexis 2018); Horse Creek Conservation Dist. v. State ex.rel. Wyoming Attorney General, 2009 WY 143, ¶ 36, 221 P.3d 306, 317-18 (Wyo.2009) (use of the word "adjacent" was sufficient to de-seribe lands available for public access).
® The description of the Dedicated Ditch in the commissioners' responses to special interrogatories is not sufficient to locate it on the ground-it was more of a suggestion than a description (emphasis added):
The Dedicated Ditch would establish a headgate and measuring device located at approximately the SE corner of the SW4 of Section 28, Township 14 North, Range 82 West. It would then run in a northwesterly direction approximately three-quarters of a mile across lands awarded to Plaintiffs at such location as the parties may jointly agree to the approximately NW corner of the NWL of Section 28, Township 14 North, Range 82 West, for the benefit of those lands awarded to Defendants. The location of the Dedicated Ditch to be specifically described and to be a permanent easement across those lands on which it is located.
@The district court's order includes the same language, and it also provides that the commissioners will be reengaged and shall employ an engineer for "purposes of determining the exact location for such Dedicated Ditch."
® The district court and the commissioners did not consider the order to have resolved the issue. The commissioners proposed a ditch in an entirely different location. The district court engaged in a lengthy analysis of the relative merits and disadvantages of all three proposed ditches, which would have been unnecessary if the first order in fact adequately specified the location.
[¶ 29] It is readily apparent that neither the court nor the commissioners ever ruled on the location of the Dedicated Ditch, but instead deferred that decision hoping that the parties, who had not to that point agreed on much of anything, would find an amicable resolution of this important issue. The Trust argues that the location later traced on a map by Ron Platt is consistent with the very vague and general description in the second order, which is true, but not particularly helpful.
[T30] The dissent correctly points out that the parties have not argued that the first order was not appealable. However, this Court has in the past found orders not to be appealable and dismissed even when the parties did not "directly raise" the issue supporting dismissal. Bd. of Trustees of Memorial Hosp. of Sheridan Cnty. v. Martin, 2003 WY 1, ¶¶ 9, 16, 60 P.3d 1273, 1275-77 (Wyo.2003). The Trust "indirectly" brought the issue to our attention by its argument. It is not surprising that the parties do not always raise appealability because they do not have the same interest as appellate courts do in avoiding piecemeal appeals. 15A Wright, supra, at § 8905. Appellate courts in other states have held that they have a duty to examine whether an order is appealable sua sponte. Kulp v. Hrivnak, 765 A.2d 796, 798 (Pa.Super.Ct.2000); Jensen v. Howard, 926 S.W.2d 77, 77 (Mo.Ct.App.1996); Baltimore Home Alliance, LLC v. Geesing, 218 Md.App. 375, 97 A.3d 220, 224 (2014), 15A Wright, supra, at § 3905.
[T31] Appeals of non-appealable orders are generally dismissed. However, in this unusual case, a decision was reached in Plait I. For that reason, we will not dismiss, but we will decline to apply res judicata or claim preclusion to an incomplete order.
[T32] The Trust also argues that the 2010 ruling is the law of the case. We disagree for the same reasons we find that res judicata/claim preclusion does not apply. The ruling did not decide the location of the Dedicated Ditch, but instead simply urged the parties to come to some agreement.
[¶ 33] Appellant is not barred from challenging the location of the Westerly Ditch.
*441 Finality of First and Second Order
[¶ 34] Unfortunately for these parties, who have expended considerable money, time, and emotion in a struggle to divide the property which is their birthright, our determination that the original "Final Judgment" entered by the district court was not complete has more profound implications for this appeal. The issue presented in Platt I was narrow, and the completeness of the order was not raised by the parties, and so the aspect of the order we have been asked to review was not scrutinized in that case as it is now.
[¶ 35] The partitioned property is used for agriculture and ranching. Those activities require irrigation water beyond that which falls on the land in the form of rain and snow. Without water diverted from streams and other watercourses, this land is worth much less. As a member of this Court has observed:
Water is the lifeblood of Wyoming. It is a scarce resource which must be effectively managed and efficiently used to meet the various demands of society.
In Re General Adjudication of All Rights to Use Water in Big Horn River System, 835 P.2d 273, 279 (Wyo.1992) (plurality opinion).
[¥36] The property has excellent water rights, some of them dating back to when Wyoming was a territory pioneering the system of priority by appropriation, which has become the model for western states.[11] The commissioners recommended, and the court ordered, that the water rights be awarded to the party who received the lands to which they were appurtenant, which is a logical solution that the parties do not challenge. Water rights can be partitioned along with the real property to which they pertain, provided that each parcel receives an equitable share of the right and has enough water to permit continued use of the land as it has historically been used. Kravik v. Lewis, 213 Mont. 448, 691 P.2d 1373, 1376 (1984); 59A Am.Jur.2d Partition § 12 (2014). Water rights are presumed to be appurtenant to the land on which the water is used when the land is conveyed. Frank v. Hicks, 4 Wyo. 502, 530-31, 35 P. 475, 484 (1894).
[¶ 37] However, water rights are useless if the water cannot be delivered to the land. To state the obvious, for water to be used, there must be ditch rights and easements for ditches sufficient to carry it to the land. Ditches require maintenance, and the easements for those ditches must therefore be sufficient to allow the use of heavy equipment. It may be necessary for the owner of the ditch to use dirt on the servient property to repair the ditch or rebury it if the water is carried through a pipe. Laden v. Atkeson, 112 Mont. 302, 116 P.2d 881, 883 (1941) (holders of dam or ditch easements may use a reasonable amount of the soil on the servient estate to repair them) (quoting Thompson on Real Property and Jones on Easements).[12]
[¶ 38] At English common law, partition in kind had to be accomplished even if it might be "inconvenient, injurious, or even ruinous to the parties in interest." A.C. Freeman, Cotenancy and Partition: A Treatise on the Law of Ownership as it Exists Independent of Partnership Relations Between the Co-Owners § 438, at 569 (2d. ed. 1886). American courts tempered that rule by refusing to partition in kind when to do so would practically destroy the property's value. Id. (citing Brown v. Turner, 1 Aik. 350, 15 Am. Dec. 696 (Vt.1826)). The Wyoming Territorial Legislature adopted the latter rule when it enacted in 1886 what is now *442 Wyo. Stat. Ann. § 1-82-109, as the statute provides for partition by allotment (where a coparcener essentially buys the other out) or by public sale, if "the estate cannot be divided according to the demand of the writ [of partition] without manifest injury to" the property. See Wyo. Stat. Ann. §§ 1-82-109 through -114 (Lexis Nexis 2018), and Revised Territorial Statutes of Wyoming §§ 2970 through 2974 (Daily Sun Steam Printing House of Cheyenne 1887). (The statutes have remained unchanged for over 120 years).
[¶ 39] "Section 1-82-109 applies when the real property cannot be divided in kind without causing manifest injury to its value." Hutchins v. Payless Auto Sales, Inc., 2004 WY 22, ¶ 13, 85 P.3d 1010, 1013 (Wyo.2004) (Hutchins II). The commissioners in this case answered special interrogatories in which they found that the property could in fact be partitioned "without manifest injury to the whole." The interrogatory answers were incorporated in the district court's initial order partitioning the property. The commissioners had been instructed to determine whether the property could be divided "without manifest injury to the property's value."
[¶ 40] A finding by commissioners which is accepted by the trial court is treated as if it were a finding made by the trial court, and it is reviewed under the same standard. Taran v. Vermont Structural Slate Co., Inc., 139 Vt. 441, 431 A.2d 448, 450 (1981); 59A Am.Jur.2d Partition § 1830 (2014)... We review trial court findings of fact to determine whether they are clearly erroneous in light of the record. Barlow Ranch, Ltd. Partnership v. Greencore Pipeline Co. LLC, 2013 WY 34, ¶ 52, 301 P.3d 75, 91 (Wyo.2013). We review questions of law decided by the trial court de novo. Id.
[¶ 41] Neither the district court nor the commissioners could have made a valid determination that the partition settled upon would not result in manifest injury to the property's value without locating the Dedicated Ditch necessary to carry water awarded to Appellant to her partitioned parcel. Without a means to convey water to irrigate meadows and pasture, the land awarded to her could not be used as it historically had been. Kravik, 691 P.2d at 1376. There can be little doubt that a property with good water rights and a means to convey the water to the land is worth considerably more in arid Wyoming than land without one or the other.
[T 42] Another problem is that two of the solutions eventually explored, the North-South and Commissioners' Ditches, will take approximately seven acres of the valuable hay meadows awarded to Appellees, which would undoubtedly impact the value of their parcel. There is no engineering data, and there are no feasibility studies, cost estimates, or evidence of conveyance losses which would have allowed the commissioners or the district court to assess the cost of the Dedicated Ditch, because its location was undetermined.
[T43] The initial order of partition exhorted the parties to work out a ditch location and determined how costs would be shared, no doubt in the hope that reason would prevail and that the ditch could be built at reasonable cost. Hope, unfortunately, is not a definitive ruling.
[T 44] The dissent characterizes the costs involved as "a wash," and it is true that the parties would pay the same amount under the district court's order. The record does not tell us, however, how much is "washed." Hypothetically, all would agree that if it costs $1,000,000 to build the ditch, there would be manifest injury to the value of the property. The only cost information in the record was provided by Appellant after the district court entered its second order, and it could not therefore have been considered in that ruling.
[¶ 45] The fact that the ditch was not located makes any finding that partition in kind would not manifestly injure the value of the property clearly erroneous. Requiring the parties to pay the cost of locating and building ditches may manifestly injure the value of the property. Amounts paid out to. utilize the water reduce the value of the land to an affected coparcener.
[¶ 46] However, whatever the shortcomings in the original partition order, the see- *443 ond trial and order may have resolved them. Appellant contends that the district court's second ruling was legally and factually erroneous. These arguments provide a focus for determining whether that ruling was a correct and complete determination based upon the record.
Ordering Parties to Obtain an Easement Not on Partitioned Land
[T47] Appellant contends that the district court erred in the second decision when it ordered the Dedicated Ditch to be built partly on land belonging to Kraft Ranches, which is not a party to the partition action. She points out that the partition statutes allow a writ for "estates of lands" held in joint tenancy, tenancy in common, or coparcenary, citing Wyo. Stat, Ann. § 1-82-101. The Trust does not confront this argument head-on, but argues instead that the parties are required to work the location of the easement out with Kraft Ranches, and that Jerry Kraft was one of the persons signing the ditch report in which the commissioners indicated that Kraft Ranches would allow an easement for the Dedicated Ditch with some restrictions. The parties are really addressing two different things-Appellant argues that the district court had no power to require the parties to acquire an additional easement across the lands of others, while Appellees argues that it may be possible to do so.
[T48] We will first address the court's power to order the parties to obtain an easement. We have exhaustively searched for a case which confronted this issue, and we have found nothing. The parties have apparently had no success either, as they have not cited a case on point. Under the civreumstances, we are left to our own devices to determine whether the district court could order something like it did. The viability of the court's decision to require construction of the Westerly Ditch is completely dependent on the parties' ability to obtain an easement from Kraft Ranches. Appellant is of course correct that the district court had no power to compel Kraft Ranches, a non-party, to grant her a ditch easement in this case.
[¶ 49] An approach lies in the concept of "owelty," although whether it can apply in this case rests on factual determinations which remain to be made. In Platt I, the Court held that district courts continue to have supplemental equitable common-law powers to partition property even though partition is also governed by statute. Platt I, ¶ 18, 264 P.3d at 808-09. As we have previously explained, owelty is a common law doctrine which addresses a disparity in the value of the partitioned parcels, and is
[a] sum of money paid by one of two coparceners or cotenants to the other, when a partition has been effected between them, but, the land not being susceptible of division into exactly equal shares, such payment is required to make the portions respectively assigned to them of equal value.
Hutchins II, ¶ 17, 85 P.3d at 1014.
[¶ 50] The value of the parcel awarded to Appellant without a definite means of conveying water to it is unknown. The cost of building a ditch affects the value of Appellant's parcel to an unknown extent. If the record supported the conclusion that it is possible to obtain an easement and build a ditch connecting the nonexistent Westerly Ditch to the King Turnbull Ditch, the district court could have directed Appellees to pay the difference in value, i.e., the cost of establishing the ditch, if that is actually the difference. It could also divide that cost as it did in order to equalize values. While this solution may not fit the strict definition -of owelty, it accomplishes the same. thing-an equitable division.
[¶ 51] However, we disagree with Appel-lee Trust and the dissent when they contend that the record supports the district court's decision. The record does not in fact support, through any competent evidence, a conclusion that an adequate easement can be obtained, and it therefore does not establish that partition will not result in manifest injury to the value of the property, or at least to the portion awarded to Alice Platt, for the following reasons:
* The Trust indicates that there was "consent" to cross Kraft Ranches with the ditch. In reality, the only document in *444 the record evidencing such a consent is the portion of the commissioners' second report quoted above. It indicates that Kraft Ranches "will" allow an easement-this is at best a vague promise of future performance.
® The commissioners' report recommended a different ditch than the district court settled on. Kraft Ranches' willingness to provide an easement for the Westerly Ditch was not addressed in the report or the testimony the district court heard.
e An easement is an interest in land, and to obligate the grantor to supply the easement, any agreement must satisfy the Statute of Frauds, which would require that there be a conveyance or agreement to convey signed by the party to be charged, i.e., Kraft Ranches. Wyo. Stat, Ann. § 1-28-105(a)(v) (LexisNexis 2013); Restatement (Third) of Prop.: Servitudes § 2.1 (2014). Jerry Kraft signed the commissioners' report as a commissioner, not as a representative of Kraft Ranches, Inc. Although the Trust indicates in its brief that Mr. Kraft is the President of Kraft Ranches, and that might be true, the record does not validate this claim.
® As noted above, Wyo. Stat. Ann. § 34-1-141(a) and (c) requires easements to be specifically described. The commissioners' report does not satisfy this requirement. The statement does not indicate whether the easement will be appurtenant (and run with the land) or in gross (and expire on conveyance of the land). It does not describe the width of the easement that would be granted.
® The report indicates that Kraft Ranches will reserve the right to "advise and oversee" any construction and maintenance. The document does not tell us what limitations this language is meant to impose, and whether it would be a burden on Appellant's ability to maintain that portion of the ditch. If the burden is too great, it may affect the value of the property awarded to her.
® The district court understood that there was no specific agreement requiring Kraft Ranches to grant an easement, because it indicated that the location of the ditch would be worked out and ordered Appellant to "work with the landowner to establish the location and appropriate documentation."
[¶ 52] Whether or not the district court's finding that the Westerly Ditch was clearly erroneous is an issue discussed below. However, it is obvious that neither the Commissioners' Ditch nor the Westerly Ditch can carry water to Appellant's parcel without crossing Kraft Ranches' property. Without determining that the easement could in fact be obtained, that it would allow appropriate construction and necessary maintenance of the ditch, and that it would run with the land, the district court had no basis to determine that the value of the partitioned property would not be manifestly injured or that the partition was equitable. Its decision in this regard was therefore clearly erroneous.
[¶ 53] However, this does not mean, as the dissent suggests, that an easement must actually be obtained before the district court can require the parties to build the Westerly Ditch. Rather, the cost and availability of an easement can be established by sworn testimony or documentary evidence. Mr. Kraft could have been asked about this issue when he testified earlier, but he was not.
[¶ 54] Appellees argue, and the dissent agrees, that if an easement cannot be obtained by agreement, one can be condemned under Wyo. Stat. Aun. § 1-26-815. In order to exercise the power of eminent domain, the parties would have to prove the elements of § 1-26-504(a):
() The public interest and necessity require the project or the use of eminent domain is authorized by the Wyoming Constitution;
ii) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury; and
(ifi) The property sought to be acquired is necessary for the project.
Wyo. Stat. Ann. § 1-26-504(a) (LexisNexis 2013).
[T 55] Given the alternative means of conveying water, and the availability of partition *445 other than in kind, the necessity of the condemnation would almost certainly be an issue with an uncertain outcome in a contested proceeding. Beyond that, the parties would have to engage in more protracted litigation, divide costs, expenses, and attorney fees, and moreover pay fair compensation in an unknown amount if successful. No evidence was presented as to the net effect this would have on the value of the property because of the funds which would have to be expended to use it. It is certainly not an easy solution as the Trust and dissent suggest, and it is not one that was presented to or considered by the district court.
Change in Means of Conveyance
[¶ 56] Appellant argues that the Westerly Ditch chosen by the district court requires her to change the means of conveyance for the water she received in the partition, and that she cannot be compelled to do so. She points to Wyo. Stat, Ann. § 41-8-114(a)(i), which provides that "[alny person entitled to the beneficial use of water ... who desires to change the point of diversion or means of conveyance, or both, shall file a petition with ... the board of control...." (Emphasis added). She also directs us to Wyo. Stat. Ann. § 41-8-114(f), which provides that no petition for a change in the point of diversion or the means of conveyance shall be granted if the right of any appropriators will be injuriously affected.
[¶ 57] The Trust correctly responds that the means of conveyance can be changed without changing the point of diversion, and argues that, despite the language of the statute, the means of conveyance can be changed without filing a petition with the Board of Control or state engineer's office. But there is no competent evidence in the record to this effect. In support of the argument, the Trust supplied the district court and this Court with the telephone number of an employee of the State Board of Control it claims has provided it this information. Neither the district court nor this Court is permitted to make ex parte, off-the-record contacts with persons claimed to have knowledge of facts pertinent to cases before them. The state employee referred to did not testify at trial. We must therefore decide this issue based upon our reading of the statute.
[¶ 58] Guided by our rules for statutory interpretation, see Aland v. Mead, 2014 WY 83, ¶ 11, 327 P.3d 752, 758-59 (Wyo.2014), the clear and unambiguous language of the statute convinces us that the Wyoming Legislature intended to require a person changing the means of conveyance of water supplied through a water right to obtain approval by the Board of Control.
[¶ 59] Appellees argue that the district court had the power to order Appellant to change her means of conveyance. We think both parties miss the point. The district court did not in fact order Appellant to change her means of conveyance. We conclude that Appellant may choose to change her means of conveyance or not; however, if the district court makes appropriate findings and orders her to use the Westerly Ditch, she will be compelled to change her means of conveyance if she wants to bring water to her land. That may be a Hobson's choice, but it may also be unavoidable.
[¶ 60] However, there was no evidence presented as to whether Appellant can in fact obtain approval to change the means of conveyance of her water. The record does not tell us whether the rights of junior appropriators would be affected in any way. If the evidence shows that Appellant cannot obtain permission to change the means of conveyance to carry water to her land, the value of the partitioned parcel she received would be affected. We will remand to the district court to determine, among other things, whether Appellant can obtain approval for a change in the means of conveyance. We recognize that this determination may be difficult to make, and if it cannot be made, the district court may have to select another route or otherwise adjust the partition.
[¶ 61] The dissent suggests that it would be unnecessary to require Appellant to first obtain a change in the means of conveyance before ordering the Westerly Ditch built. We agree. However, whether a change in the means of conveyance will be granted can be proven by a preponderance of competent evidence like any other fact. The individual *446 the Trust suggested the district court and this Court call on the phone can testify in person or by telephone if that is more convenient. See Uniform Rule of District Court 802 (allowing testimony by conference call).
Abuse of Discretion in Choice of Westerly Ditch
[T62] Appellant contends that the district court abused its discretion in choosing the Westerly Ditch. She contends that the North-South Ditch provided an existing and proven means of conveying water to her partitioned land, and that the Commissioners' Ditch would also have been a better choice than the Westerly Ditch. She points out that none of the Westerly Ditch exists, and that it is unproven.
[¶ 63] The Trust directs us to testimony indicating that the appointed commissioners and Ron Platt, all of whom were experienced irrigators, testified that the Westerly Ditch could be successfully built and operated, although it may be necessary to encase all or parts of it in pipe and/or to employ other measures to prevent water loss from porous soils. An engineer retained by Appellant agreed.
[¶ 64] We conclude that there was sufficient evidence for the district court to conclude that the Westerly Ditch could be sue-cessfully built and operated if the parties expend enough money, time, and effort. However, the court was presented with no evidence as to the cost of constructing it until after it selected the Westerly route. The district court therefore had nothing to establish that a partition which required the location and construction of the Westerly Ditch would not manifestly injure the value of the property because of the cost of surveying, engineering, and building it. Because we remand to determine whether an easement and a change in means of conveyance can be obtained, we also remand for a determination as to whether the cost of building the Westerly Ditch would manifestly injure the value of the property.
Other Issues Relatingr to the Order
[¶ 65] The order presents other issues that should be addressed:
@The order requires the parties to pay any statement for surveying, engineering, building, and maintaining the Dedicated Ditch within thirty days, and it also provides for interest at ten percent and attorney fees if the bill is not paid. We are aware of no authority that would allow a court to in essence make a contract for the parties. We have generally held to the contrary in cases involving contract interpretation. See, eg., Michael's Const., Inc. v. American Nat'l Bank, 2012 WY 76, ¶ 34, 278 P.3d 701, 710 (Wyo.2012).
Prejudgment interest is limited to seven percent per annum unless the parties otherwise agree, although a judgment accrues interest at ten percent unless otherwise agreed by contract Wyo. Stat. Ann. § 40-14-106(e), § 1-16-102(a) and (b) (LexisNexis 2013). The district court had no power to set a rate not authorized by statute for a prejudgment debt.
Attorney fees can only be awarded if permitted or required by contract or statute. Fix v. South Wilderness Ranch Homeowners Ass'n, 2012 WY 96 ¶ 17, 280 P.3d 527, 532 (Wyo.2012). There is no applicable statute or contract in this case. -If a party willfully fails to obey a court order he or she is able to perform, perhaps a compensatory contempt award could be made, but that would require a hearing to establish facts specific to the alleged contempt. Walker v. Walker, 2013 WY 132, ¶ 39, 311 P.3d 170, 178 (Wyo.2013).
® The order does not address the complex mechanies of entering into contracts to build the Westerly Ditch. It is doubtful that contractors will put tens of thousands of dollars of material and labor into a project without an assurance of payment in the form of a deposit, security or an agreement that protects their right to payment. Liens in the event contractors are not paid are another issue. It is unlikely that Kraft Ranches would want a lien on its property. It is thus unclear what obligation each party would have to enter into necessary con *447 tracts, and the consequences if they do not. See, eg., Redco Const. v. Profile Properties, LLC, 2012 WY 24, 271 P.3d 408 (Wyo.2012) (no lien on property of lessor for improvements contracted for by lessee unless there is an agreement or lessee is lessor's agent).
e The order is not specific as to the specifications to which the ditch must be constructed. The options range from a ditch which may be partially or mostly earthen with some piping and drop strue-tures to a ditch completely enclosed in pipe. The order leaves the parties to agree on the nature of the ditch, which will affect its cost, and they seem to have agreed on very little to date.
Petition for Stay
[¶ 66] As noted above, Appellant applied for a stay in the district court and here, and was denied both times. The decision to reverse and remand will result in further delay during a time in which she has no means of conveying water to her land. We can only hope that sufficient rain fell in 2014, a very wet year, to permit ranching operations. The record reflects that in most years there is no available irrigation water in this area after July 4, and that date is long past. On remand, we anticipate that the district court will develop an interim means of assuring that Appellant receives sufficient water to carry on ranching operations, and that it will set a realistic and specific time frame for completion of a Dedicated Ditch, if it decides that it can in fact partition in kind.
SUMMARY AND CONCLUSION
[¶ 67] Because this case is complex and our opinion is long, and because this is the second time we have dealt with this partition action, we will provide a more detailed summary than is our usual practice. The district court must first determine if a partition can be made without doing manifest injury to the value of the property, and that the division is equitable to all parties. We understand that for the litigants, ranching is not an cccupation-it is a way of life. Their forebears occupied and served as stewards of this land for well over a century, and some of them are buried upon it. We grasp that neither party probably wants the land partitioned by allotment or sale.
[T68] We also understand that the expense of presenting evidence to resolve the issues we have identified may be considerable, and that they have already undoubtedly incurred sufficient legal expense to build a very fine ditch We appreciate the work done by the commissioners and the difficult decisions the district court has been faced with. Nonetheless, this is not an amicable partition in which the parties agreed on all significant issues, and it may simply not be possible to partition in kind in light of the nature of this property. See Wyo. Stat. Ann. § 1-82-108 (amicable partition). There are simply too many unresolved issues to allow us to determine whether the partition in kind ordered by the district court is possible, much less whether it will result in manifest injury to the property, or for this to be a final order which an appellate court can adequately review.
[¶ 69] The dissent suggests that a remand to make the factual determinations above will unjustly prolong this already prolonged dispute. It correctly points out that we considered a narrow issue three years ago. While this is true, that decision unfortunately involved an order which did not resolve necessary issues. The district court's order currently before us is also incomplete and unworkable, and it is unavoidable that further proceedings will be required.
[¶ 70] A condemnation proceeding, if required, would be another lawsuit, and would probably entail more time and considerable expense. The district court, however, can efficiently hold a hearing to resolve the factual issues identified below, and enter an appropriate order on a complete record. If the parties are not satisfied and feel it necessary to appeal again, at least this Court will have a sufficient record to allow it to make an informed decision on the merits, rather than speculating as to what the facts might be.
[¶ 71] We remand for the district court to determine whether the land can be partitioned in kind without manifest injury to its value, and if so, in light of the costs and *448 obstacles involved, whether the district court still believes that the Westerly Ditch provides an equitable means of dividing the property. The district court should determine the following:
® Can a permanent easement running with the land be obtained from Kraft Ranches, and if so, will it be large enough and free of restrictions which would cause manifest injury to the value of Appellant's property?
® Is the location in the second order specific enough to locate the ditch on the ground?
® Will Appellant probably be able to obtain permission to change her means of conveyance? This will also require a determination of the probable interests of junior appropriators.
eIf a permanent easement can be obtained, and if a change in means of con-veyanee is likely to be approved, what specifications must the ditch meet, and how much will it cost? Will the cost of the ditch cause manifest injury to the value of the property because the parties must pay to survey, build, and maintain it?
® Whichever route the district court chooses for the Dedicated Ditch, are special provisions required to assure that they will enter into appropriate contracts?
® If the court concludes that the Westerly Ditch cannot be built for any of the reasons discussed above, and selects the North-South or Commissioners' Ditch, will the location of the ditch take enough of Appellees' hay meadow to render the partition inequitable?
© What is an appropriate time frame to complete the ditch after the ruling, and what interim means will be used to supply Appellant with water?
[T72] Reversed and remanded for further proceedings consistent with this opinion.

. The record indicates that there was a prior partition action involving other portions of the ranch, but tells us nothing about it.

. This statute was amended in 2013, but the amendment has no effect on this appeal.

. They also recommended that all available water in excess of adjudicated water rights in wet years be split equally.

. The parties might have agreed to use the same means of conveyance, but have not done so. The acrimony between them evidently makes separation of the appropriation of each necessary.

. The Court could have converted the appeal to a petition for review and ruled as it did. See Schwab v. JTL Group, 2013 WY 138, ¶ 14, 312 P.3d 790, 794-95 (Wyo.2013). Perhaps Platt I can best be viewed as the functional equivalent of conversion.

. There seems to be no doubt that there is an ' easement for a ditch conveying water from the King Turnbull No. 2 ditch on the Kraft ranch to the southern boundary of the partitioned property. Whether it was granted as part of a prior partition, a grant, or is prescriptive is not clear.

. Appellees point out that the total drop is all the same, because the water must be moved from the King Turnbull Ditch to the Pool Field. However, elevation is obviously not lost at the same rate on all alternatives.

. The July i, 2010 Final Judgment and Order Partitioning Real Property indicates that "(flu-ture maintenance costs incurred in the maintenance of the headgate and second measuring device located at the approximate SE corner of thie SW4 of Section 28, Township 14 North, Range 82 West, shall be the responsibility of the Defendants and the cost of maintaining the Dedicated Ditch once constructed shall also be the responsibility of the Defendants." Under that order, Alice would be responsible for maintenance after three years. However, the August 26, 2013 order indicates that "[blecause the problems created on the Plaintiffs' land with the creation of the Dedicated Ditch are hard to predict until the Dedicated Ditch is put in service, such ditch remediation measures shall be undertaken and completed within three years of the Defendant's first use of the Dedicated Ditch and thereafter, the Plaintiffs shall be responsible for all costs associated with the ditch remediation measures." This provision would require the Trust to maintain the ditch after three years, even though it gains no benefit from it. We anticipate that this ambiguity will be cleared up on remand.

. The major difference between the two was in the contractors' estimates. One of the contractors recommended that the ditch not be used for one year in order to allow the soils to resettle and compact.

. We note that the bids Alice solicited were for twenty-four inch pipe, which may explain the cost differences.

. Thus United States Supreme Court has explained the same:
Certainty of rights is particularly important with respect to water rights in the Western United States. The development of that area of the United States would not have been possible without adequate water supplies in an otherwise water-scarce part of the country. The doctrine of prior appropriation, the prevailing law in the western states, is itself largely a product of the compelling need for certainty in the holding and use of water rights. Arizona v. California, 460 U.S. 605, 620, 103 S.Ct. 1382, 1392, 75 L.Ed.2d 318 (1983) (citations omitted), decision supplemented, 466 U.S. 144, 104 S.Ct. 1900, 80 L.Ed.2d 194 (1984)

. Of course, the language of an easement may eliminate or further limit the rights found to be implied by the grant in Laden. R.C.R., Inc. v. Deline, 2008 WY 96, ¶ 5, 190 P.3d 140, 146 (Wyo.2008) (language of easement determines its scope and rights of the parties).